UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------- X

M.G. and V.M., on behalf of themselves
individually and their child, Y.T.,

             **Plaintiffs,**

   - against -

NEW YORK CITY DEPARTMENT OF
EDUCATION; NEW YORK CITY
BOARD OF EDUCATION; DENNIS
WALCOTT, in his official capacity as
Chancellor of the New York City School
District,

             **Defendants.**

-------------------------------------------------- X

**OPINION AND ORDER**

**13 Civ. 4639 (SAS)**



**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

       The parents of Y.T. — a child with autism in the New York City

school system — filed this action against the New York City Department of

Education ("DOE") and other defendants, and are seeking a preliminary injunction

to maintain Y.T.'s current 1:1 applied behavioral analysis ("ABA") home services

and also to add several new services to his educational placement.  Because

plaintiffs have not yet exhausted administrative review on their claims, this Court

1

lacks subject-matter jurisdiction to consider their request for new services. However, because I find that the 1:1 ABA services are part of Y.T.'s current educational placement, and therefore must be maintained during the pendency of the state administrative review, plaintiffs need not exhaust administrative remedies to seek continuation of these services. Further, they are entitled to an injunction enjoining defendants from defunding the 1:1 ABA home services until a final, non-appealable order or an uncontested individualized education program ("IEP") removes those services from Y.T.'s educational placement.

## II.     FACTUAL BACKGROUND

### A.     Y.T.'s Background

Y.T. is an eleven year old child who has been classified as a student with autism.[1] This manifests itself through "weaknesses and deficits in the areas of cognition, focus/attention, eye contact, socialization, expressive and receptive language, activities of daily living . . . , behavior, gross motor skills and fine motor

---

[1]     *See* Complaint ("Compl.") ¶ 1; Defendants' Memorandum of Law in Opposition to Plaintiffs' Application for a Preliminary Injunction ("Opp. Mem.") at 1.

development."[2]  "Y.T. is nonverbal,"[3] and also has problems using the toilet, is self-injurious, and hyperactive.[4]

**B.    The 2008-2012 School Years**

While born in Egypt, Y.T. moved with his parents to New York in 2008, where he was enrolled in the New York City public school system.[5]  Upon their arrival, plaintiffs notified the DOE that Y.T. needed "special education placement and services," and the DOE began evaluating him in September 2008 to determine a proper educational placement.[6]  During this evaluation, the DOE created an interim service plan ("ISP") for Y.T., placing him in a 6:1:1 ratio classroom at P.S. 255 in District 75 (a citywide district for students with disabilities) with a 1:1 Arabic-speaking paraprofessional.[7]  However, school staff could not find an Arabic-speaking paraprofessional and plaintiffs were not

---

[2]    Compl. ¶ 40.

[3]    *Id.* ¶ 41.

[4]    *See id.* ¶¶ 42-43, 45-46.

[5]    *See id.* ¶¶ 3, 38, 51; Plaintiffs' Memorandum of Law in Support of Their Motion for a Temporary Restraining Order and Preliminary Injunction ("Pl. Mem.") at 6; Opp. Mem at 1.

[6]    *See* Compl. ¶¶ 51-52.

[7]    *See id.* ¶¶ 4, 65.

provided with translation services for much of the period prior to the instant action.[8]

In November 2008, defendants conducted the first IEP meeting for Y.T.[9]  "The IEP team classified Y.T. as autistic" and recommended the aforementioned 6:1:1 classroom, along with other services.[10]  The paraprofessional recommendation was changed in 2009 to a "monolingual crisis paraprofessional" instead of the Arabic speaker first recommended, but the 6:1:1 classroom recommendation remained constant.[11]

Plaintiffs allege that this program failed to produce any progress for Y.T. during the 2008-2012 academic years, but defendants still did not change the IEP recommendations or add additional services.[12]  They also claim that defendants

---

[8]     *See id.* ¶¶ 63, 65-67, 69, 74, 84, 93, 102, 114, 119.

[9]     *See id.* ¶ 68.

[10]     *Id.* ¶ 69.

[11]     *See id.* ¶¶ 86, 90, 104, 116.  Plaintiffs allege that DOE "place[s] a majority of children who are classified as autistic in their 6:1:1 programs."  Pl. Mem. at 6.

[12]     *See* Compl. ¶¶ 79, 96-97, 106-107, 116.

failed to properly constitute two of the IEP teams[13] and did not conduct required evaluations of Y.T.[14]

## C.    The State Administrative Complaint

In February 2012, plaintiffs filed a complaint seeking modification to the 2011-2012 IEP and "compensatory education for the previous three years."[15] On April 20, 2012, the Impartial Hearing Officer ("IHO") assigned to Y.T.'s case issued a first Interim Order directing the DOE to conduct several assessments and evaluations of Y.T.[16]  On June 25, the IHO issued a Second Interim Order.[17]  In that order, the IHO decided that "[r]ather than wait[ing] until the conclusion of the entire hearing, . . . the record establishe[d] the appropriateness of supplemental ABA services outside the school day to permit the student to make educational

---

[13]    *See id.* ¶¶ 92, 103.

[14]    *See id.* ¶¶ 62, 87, 113.

[15]    *Id.* ¶ 117.  Plaintiffs refer to this complaint as a "due process complaint" or "DPC," presumably in reference to the "impartial due process hearing" afforded under federal law.  *See* 20 U.S.C. § 1415(f) (2006).

[16]    *See* Compl. ¶ 129; 4/20/12 Interim Order, Ex. L to 7/3/13 Declaration of Elisa Hyman, Attorney for Plaintiffs ("Hyman Decl."), at 3-4.

[17]    *See* Compl. ¶ 131; 6/25/12 Second Interim Order ("Second Interim Order"), Ex. M to Hyman Decl.

progress."[18]  Accordingly, she ordered the DOE to fund ten hours per week of

ABA services,[19] which it began providing to Y.T. in the summer of 2012.[20]

During the pendency of this matter before the IHO, Y.T. entered the

2012-2013 school year, still placed in the 6:1:1 classroom environment along with

the 1:1 ABA home services included in the IHO's interim order.[21]  On October 26,

the IHO issued another interim order, increasing the ABA home services to fifteen

hours per week and also ordering translation services.[22]  The DOE complied and

provided this higher level of services.[23]

On February 11, 2013, the IHO issued a final Findings of Fact and

Decision ("IHO Decision").[24]  The IHO denied compensatory services for the

2008-2011 academic years on the ground that Y.T. "was not significantly denied a

---

[18]     Second Interim Order at 3.

[19]     *See id.*; Compl. ¶ 131.

[20]     *See* Compl. ¶ 132.  The DOE did not appeal this or any of the other interim orders issued by the IHO.  *See id.* ¶ 141.

[21]     *See id.* ¶¶ 132, 134, 137.

[22]     *See id.* ¶ 138; 10/26/13 Third Interim Order, Ex. N to Hyman Decl., at 4.

[23]     *See* Compl. ¶ 139.

[24]     *See* Ex. O to Hyman Decl.; Pl. Mem. at 13.

6

FAPE [free appropriate public education] . . . to arise to the level of meriting an

award of compensatory services."[25]

However, the IHO found that the services provided for the 2011-2012

school year were insufficient:

> By that date the student had been in the 6:1:1 class at PS 255 for
> three full years and had . . . the assistance of a 1:1
> paraprofessional for two years. The DOE had access to multiple
> progress reports and other evaluative material . . . to indicate the
> student's slow rate of progress and the repeated instances of
> unmet goals from one IEP to the next. . . . Thus I find that the
> [DOE] was now on notice that additional home-based service
> were appropriate . . . . Based upon . . . credible testimony . . . I do
> not find that the recommended 6:1:1 class, using a mixed modality
> of instructional methods, was inappropriate for 2011-2012 — just
> insufficient without additional 1:1 instruction outside the school
> day. . . .
> . . . . I now find it appropriate, so long as the student is not
> receiving full-time ABA instruction in school to increase the
> home services to 20 hours per week with at least 16 hours to be
> direct services to the student.[26]

The remainder of plaintiffs' requested relief was denied.[27]

On March 25, 2013, plaintiffs appealed the IHO's decision to the State

Review Officer ("SRO") at the New York State Department of Education.[28]  The

---

[25]     *Id.* at 15.

[26]     *Id.* at 16-17.

[27]     *See id.* at 18.

[28]     *See* Pl. Mem. at 13; Opp. Mem. at 4.

DOE then filed an Answer and Cross Appeal, and this administrative appeal is still ongoing.[29]

### D.    The Instant Action

At the end of the 2012-2013 school year, plaintiffs were informed that the DOE intended to discontinue the 1:1 ABA home services as of June 30, 2013.[30] In response, plaintiffs filed their Complaint in this Court, seeking a temporary restraining order ("TRO"), preliminary injunction, and a permanent injunction ordering additional services for Y.T.[31]   A TRO was issued maintaining the current 1:1 ABA home services until this Court could rule on plaintiffs' request for a preliminary injunction.[32]

## III.   LEGAL STANDARD

"'A preliminary injunction is an extraordinary remedy never awarded as of right.'"[33]   In general, to obtain a preliminary injunction, the moving party

---

[29]      *See* Pl. Mem. at 13; Opp. Mem. at 5.

[30]      *See* Pl. Mem. at 14; Opp. Mem. at 5.  Plaintiffs only learned of this fact after contacting the DOE through counsel.  *See* Pl. Mem. at 14.

[31]      *See* Compl. at 40-43.

[32]      *See* 7/5/13 Temporary Restraining Order and Order to Show Cause for Preliminary Injunction.

[33]      *UBS Fin. Servs., Inc. v. West Virginia Univ. Hosps., Inc.*, 660 F.3d 643, 648 (2d Cir. 2011) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555

must establish:  "[1] that [it] is likely to succeed on the merits, [2] that [it] is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in [its] favor, and [4] that an injunction is in the public interest."[34] The moving party may be entitled to a preliminary injunction even if the party is unable to establish a likelihood of success on the merits, provided that the party demonstrates "'a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiff's favor.'"[35] In addition, when the moving party seeks a "mandatory" injunction, that is, an injunction that commands action rather than merely prohibiting it, the standard is

---

U.S. 7, 24 (2008)).

[34]     *Winter*, 555 U.S. at 20 (citing *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008); *Amoco Production Co. v. Gambell*, 480 U.S. 531, 542 (1987); *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 311-12 (1982)).  *See also* Fed. R. Civ. P. 65(a) (preliminary injunctions).

[35]     *Red Earth LLC v. United States*, 657 F.3d 138, 143 (2d Cir. 2011) (quoting *Metropolitan Taxicab Bd. of Trade v. City of New York*, 615 F.3d 152, 156 (2d Cir. 2010)).  *Accord Pamlab, L.L.C. v. Macoven Pharm., L.L.C.*, 881 F. Supp. 2d 470, 475 (S.D.N.Y. 2012) (recognizing that the Supreme Court in *Winter* "cast some doubt on the continuing viability" of the Second Circuit's "serious questions" prong, but noting that "the Second Circuit has since held that 'our venerable standard for assessing a movant's probability of success on the merits remains valid'" (quoting *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 38 (2d Cir. 2010))).

higher:  "[W]here 'the injunction sought will alter rather than maintain the status quo,' the movant must show [a] 'clear' or 'substantial' likelihood of success."[36]

## IV.   APPLICABLE LAW

The Individuals with Disabilities Education Act ("IDEA")[37] is designed "to ensure that all children with disabilities have available to them a free appropriate public education."[38]  Under IDEA, a state must provide a FAPE "to all children with disabilities residing in the State between the ages of 3 and 21,"[39] and must develop an IEP for each child with a disability.[40]  "[F]or a child's IEP to be adequate, it must be 'likely to produce progress, not regression, and [must] . . .

---

[36]     *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 233 (2d Cir. 1999) (quoting *Jolly v. Coughlin*, 76 F.3d 468, 473-74 (2d Cir. 1996)).  The Second Circuit has recognized that "[t]he distinction between mandatory and prohibitory injunctions is not without ambiguities or critics, and that in a close case an injunction can be framed in mandatory or prohibitory terms."  *Jolly*, 76 F.3d at 474 (quotation marks and citations omitted).

[37]     20 U.S.C. § 1400 *et seq.*

[38]     *Id.* § 1400(d)(1)(A).

[39]     *Id.* § 1412(a)(1)(A).

[40]     *See id.* § 1412(a)(4).  *See also id.* § 1414(d) (outlining minimum requirements for an IEP and how it is developed).

afford[] the student with an opportunity greater than mere trivial advancement.'"[41] "However, it need 'not . . . furnish every special service necessary to maximize each . . . child's potential.'"[42]

IDEA also requires states to establish procedural safeguards for children with disabilities and their parents to ensure that they can exercise their rights under the Act.[43]  One of those safeguards is the ability to file an administrative complaint challenging a child's educational placement or the provision of a FAPE, and the right to an "impartial due process hearing" on that complaint.[44]  In New York, this hearing "is [first] conducted by [the] local educational agency" through an IHO, and either party may appeal the IHO's decision to the state educational agency.[45]

---

[41]     *M.H. v. New York City Dept. of Educ.*, 685 F.3d 217, 224 (2d Cir. 2012) (alterations in original) (quoting *T.P. ex rel. S.P. v. Mamaroneck Union Free Sch. Dist.*, 554 F.3d 186, 195 (2d Cir. 2009)) (internal quotation marks omitted).

[42]     *Id.* (first ellipses in original) (quoting *Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 379 (2d Cir. 2003)).

[43]     *See* 20 U.S.C. § 1415(a).

[44]     *See id.* § 1415(b)(6), (f).

[45]     *Id.* § 1415(g)(1); N.Y. Educ. Law § 4404.

Once a party exhausts these administrative remedies, it may seek review of the final decision in either a state or federal district court.[46] While "judicial review is normally not available under [IDEA] until all administrative proceedings are completed, . . . parents may bypass the administrative process where exhaustion may be futile or inadequate."[47] This is limited to situations where "adequate remedies" are not available or where "'wrongs alleged could not or would not have been corrected'" through the administrative process.[48] If there has not been administrative exhaustion and exhaustion is not excused, a court will lack subject-matter jurisdiction over claims brought under IDEA.[49]

---

[46]   *See* 20 U.S.C. § 1415(i)(2)(A).

[47]   *Honig v. Doe*, 484 U.S. 305, 326-27 (1988).  *Accord Cave v. East Meadow Union Free Sch. Dist.*, 514 F.3d 240, 249 (2d Cir. 2008).

[48]   *Levine v. Greece Cent. Sch. Dist.*, 353 Fed. App'x 461, 464-65 (2d Cir. 2009) (quoting *Heldman v. Sobol*, 962 F.2d 148, 158 (2d Cir. 1992)).

[49]   *See Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199 (2d Cir. 2002).  While plaintiffs also assert claims under Section 794 of Title 29 of the United States Code (Section 504 of the Rehabilitation Act), these claims are also subject to IDEA's exhaustion requirement.  IDEA requires that "before the filing of a civil action under [other federal laws] seeking relief that is also available under [IDEA], the [administrative] procedures under [IDEA] shall be exhausted to the same extent as would be required had the action been brought under [IDEA itself]."  20 U.S.C. § 1415(*l*).

IDEA also contains a "stay-put" or "pendency" provision, which states that during any of these hearings or appeals, "the child shall remain in the then-current educational placement of the child."[50]  This provision applies in all cases "unless the State or local educational agency and the parents otherwise agree."[51]  In a pendency provision claim, the "inquiry focuses on identifying the student's then current educational placement."[52]  Normally, the "then current placement" is "the last agreed upon placement at the moment when the due process proceeding is commenced."[53]  Importantly, though, "[t]he purpose of the pendency provision is to provide stability and consistency in the education of a student with a disability,"[54] including "a stable learning environment during what may be a lengthy administrative and judicial review."[55]

---

[50]     20 U.S.C. § 1415(j).  *Accord* 34 C.F.R. § 300.518(a) (2013).

[51]     20 U.S.C. § 1415(j).

[52]     *Arlington Cent. Sch. Dist. v. L.P.*, 421 F. Supp. 2d 692, 696 (S.D.N.Y. 2006) (citing *Zvi D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982)).

[53]     *Id.*

[54]     *Id.* (citing *Honig*, 484 U.S. 305).

[55]     *Murphy*, 297 F.3d at 199.

13

A party seeking a judicial remedy for a violation of the stay-put provision need not exhaust its administrative remedies.[56]  This is because "'an immediate appeal is necessary to give realistic protection to the claimed right,'" making administrative exhaustion "inadequate."[57]  When such a claim is brought, "[p]endency has the effect of an automatic injunction, which is imposed without regard to such factors as irreparable harm, likelihood of success on the merits, and a balancing of the hardships."[58]

## V.   DISCUSSION

### A.   The 1:1 ABA Services Should Be Maintained Through Pendency

Plaintiffs seek an injunction to maintain the 1:1 ABA home services that Y.T. is now receiving throughout the pendency of their state proceedings and possible court review.[59]  Because this Court's enforcement of IDEA's pendency provision is automatic and does not require a showing of "irreparable harm,

---

[56]     *See id.* at 199-200.

[57]     *Id.* at 199 (quoting *Miss America Org. v. Mattel, Inc.*, 945 F.2d 536, 545 (2d Cir. 1991)).

[58]     *Arlington*, 421 F. Supp. 2d at 696 (citing *Zvi D.*, 694 F.2d 904).

[59]     *See* Compl. at 40.

likelihood of success on the merits, [or] a balancing of the hardships,"[60] all that remains is for me to determine what Y.T.'s "current educational placement" is.[61]

Though not found in the 2011-2012 or 2012-2013 IEPs, the 1:1 ABA services became a part of Y.T.'s "current educational placement" once the DOE began providing them.  Ordinarily, the current placement for pendency purposes is "the last agreed upon placement at the moment when the due process proceeding is commenced."[62]  However, that placement was already deviated from the time the DOE began providing Y.T. with 1:1 ABA services under the IHO's Second Interim Order.[63]  Although the parties disagree as to whether this change constitutes an agreement between the parents and the DOE to change Y.T.'s educational

---

[60]     *Arlington*, 421 F. Supp. 2d at 696 (citing *Zvi D.*, 694 F.2d 904).

[61]     *Id.*  Even without *Zvi D.*'s rule that a court's enforcement of IDEA's pendency provision acts as "an automatic preliminary injunction," 694 F.2d at 906, plaintiffs here would still be entitled to preliminary injunctive relief.  There is "'a serious question going to the merits to make them a fair ground for trial,'" and the "'balance of hardships tip[s] decidedly in the plaintiff[s'] favor.'"  *Red Earth*, 657 F.3d at 143 (quoting *Metropolitan Taxicab*, 615 F.3d at 156).

[62]     *Id.*

[63]     *See* Compl. ¶ 132; Opp. Mem. at 15.

placement,[64] in either case the current educational placement of Y.T. includes these services.  Regardless of "agreement," the DOE implemented these changes instead of waiting to do on pendency grounds.  To remove these services now, pending the outcome of any number of further administrative or judicial proceedings regarding past or present academic years, would destroy the purposes of the pendency provision:  maintaining a stable and consistent educational environment for the child.[65]

Defendants also argue that the 1:1 ABA services are compensatory in nature and thus not part of Y.T.'s current educational placement.[66]  However, the interim orders and final IHO Decision do not support this interpretation.  The IHO Decision states that the 2011-2012 IEP was "insufficient without additional 1:1 [ABA] instruction outside the school day" and that Y.T. is entitled to twenty hours per week of 1:1 ABA home services "*so long* as [Y.T.] is not receiving full-time

---

[64]     *See* 20 U.S.C. § 1415(j) (creating an exemption to the stay-put requirement when "the State or local educational agency and the parents" agree to the change); Pl. Mem. at 17; Opp. Mem. at 15.

[65]     *See Arlington*, 421 F. Supp. 2d at 696 (citing *Honig*, 484 U.S. 305). *See also Doe v. Brookline Sch. Comm.*, 722 F.2d 910, 917 (1st Cir. 1983) ("Congress has expressed a strong preference for the preservation of the status quo through its enactment of [the pendency provision] . . . .").

[66]     *See* Opp. Mem. at 14-15.

ABA instruction in school."[67]  The reasoning behind the IHO's opinion declaring

an IEP inadequate for lack of ABA services would equally apply to any future IEP

that also fails to include those services.

Contrary to defendants' argument,[68] no language in the IHO Decision

supports their claim that the ABA services were compensatory in nature.  Although

the portion of the IHO Decision ordering 1:1 ABA services made reference to the

November 8, 2011 IEP, this reference was merely to indicate that by this point the

DOE was on notice of Y.T.'s need for additional services beyond what had been

previously included in his IEPs.[69]  The only part of the order that could be read to

suggest any time limitation on these services is an attached form after the signature

page ordering the payment.[70]  In fact, the IHO stated that a key reason for not

immediately ordering *full-time classroom* ABA instruction, an order far beyond the

1:1 home services disputed here, was so Y.T. could be reevaluated at the close of

---

[67]     IHO Decision at 17 (emphasis added).

[68]     *See* Opp. Mem. at 14-15.

[69]     *See* IHO Decision at 18.

[70]     *See id.* at 25.

the 2012-2013 school year after receiving additional 1:1 ABA instruction.[71]  This demonstrates that to the extent the IHO anticipated cessation of the ABA home care, it would be replaced by *more* 1:1 instruction, belying any argument that the services were compensatory.

This Court recognizes the potentially perverse incentives caused by ordering the ABA services under the stay-put provision.  By complying with the IHO's interim orders and providing Y.T. with the 1:1 ABA services, the DOE opened itself to being forced to maintain the provision of these services throughout the pendency of plaintiffs' administrative complaint and appeals.[72]  However, the pendency provision is designed to "provide stability and consistency in the education of a student with a disability."[73]  The potential for increased reluctance by state and local educational agencies to provide desired services during pendency is not enough to overcome IDEA's clear intent to avoid undue disruption in Y.T.'s educational environment.

---

[71]     *See id.* at 17.

[72]     *See* Opp. Mem. at 15.

[73]     *Arlington*, 421 F. Supp. 2d at 696 (citing *Honig*, 484 U.S. 305).

18

**B.      Plaintiffs' Request for Mandatory Injunctive Relief Is Denied**

In addition to the maintenance of the currently-received 1:1 ABA home services under IDEA's pendency provision, plaintiffs also request an order directing defendants to provide additional services, evaluations, and observations.[74] Plaintiffs do not contend that these additional services are part of Y.T.'s current educational placement and thus excused from the administrative exhaustion requirement.  Nor do they contend that they have in fact exhausted their administrative claims.[75]  Because plaintiffs cannot show that administrative exhaustion is otherwise futile or inadequate,[76] this Court currently lacks subject-matter jurisdiction to decide on their request for mandatory injunctive relief.

As their first ground for exemption from the exhaustion requirement, plaintiffs claim that the administrative system is unduly delayed.[77]  Though it is

---

[74]      *See* Compl. at 40-41.

[75]      *See* Compl. ¶¶ 248-257; Pl. Mem. at 15.

[76]      *See Honig*, 484 U.S. at 327.

[77]      *See* Compl. ¶¶ 251, 254-255.  In support of this argument, plaintiffs cite to *Sabatini v. Corning-Painted Area School District*, 78 F. Supp. 2d 138 (W.D.N.Y. 1999), where the court exempted the plaintiffs from exhaustion due to delays in the administrative process, *see id.* at 141; Pl. Mem. at 15 n.5.  To whatever extent the arguments made in *Sabatini* are pursuasive to this Court, the facts of that case are distinguishable.  The *Sabatini* court made a significant point

true that the SRO here has not issued its final decision within the thirty days provided for by regulation,[78] plaintiffs submitted their last filing in that review on July 1, and briefing should have been fully submitted as of July 22.[79]  Though this may constitute a delay relative to the timeline established by federal regulations, at this time I do not believe that "'the wrongs alleged [cannot] . . . be[] corrected by resort to the administrative hearing process.'"[80]

      Plaintiffs also argue that their Complaint raises "systemic policy and practice claims" which the administrative process has "'no power to correct.'"[81]  However, plaintiffs have failed to plead that the SRO is incapable of ordering relief that could remedy the alleged systemic failures.[82]  Indeed, the relief plaintiffs seek

---

of noting that it was *defendants* in that case, not plaintiffs, who had appealed the IHO decision, and that there was "no indication of the reason for the delay or the date when the appeal will be decided."  78 F. Supp. 2d at 141.

[78]    *See* 34 C.F.R. § 300.515(b).

[79]    *See* Opp. Mem. at 5.

[80]    *Levine*, 353 Fed. App'x at 464 (quoting *Heldman*, 962 F.2d at 158).

[81]    *Levine*, 353 Fed. App'x at 465 (quoting *J.S. v. Attica Cent. Sch.*, 386 F.3d 107, 113 (2d Cir. 2004)).

[82]    *See* Compl. ¶¶ 163-188.

from this Court is functionally the same as that sought in their appeal to the SRO.[83]

Plaintiffs do not plausibly contend that the SRO lacks power to grant the relief

requested on behalf of Y.T.

        Even if this Court had subject matter jurisdiction to grant plaintiffs'

requested mandatory relief, their claims do not meet the standard for a preliminary

injunction.  Plaintiffs are requesting additional services that are not currently being

provided to Y.T.  They have failed to show irreparable harm from not receiving

these additional services immediately (as opposed to upon the conclusion of

normal administrative or judicial processes).  Nor have they demonstrated a

substantial likelihood of success on the merits or that the balance of hardships tips

decidedly in their favor.  If the requested injunction were entered, the DOE would

be forced to provide services never before ordered for Y.T., while Y.T.'s not

receiving the services would merely maintain the status quo.  For all of these

reasons, plaintiffs' request for a mandatory preliminary injunction ordering

additional services beyond those currently received by Y.T. is denied.

---

[83]    *Compare* Compl. at 40-43, *with* 3/25/13 Petition to New York State
Review Officer, Ex. E to Hyman Decl.

## VI.   CONCLUSION

For the reasons set forth above, plaintiffs' request for a preliminary injunction is granted in part and denied in part.  Defendants are enjoined from terminating funding for the services provided to Y.T. under his current educational placement, including the current level of 1:1 ABA home services, until a final, non-appealable order or an uncontested IEP removes those services from Y.T.'s educational placement.  A conference is scheduled for August 12, 2013 at 5:00 p.m.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            August 1, 2013

22

**- Appearances -**

**For Plaintiffs:**

Elisa F. Hyman, Esq.
Friedman & Moses, LLP
233 Broadway, Suite 901
New York, NY 10279
(646) 572-9064


**For Defendants:**

Andrew J. Rauchberg
Assistant Corporation Counsel
100 Church Street, Room 2-189
New York, NY 10007
(212) 356-0891