UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

M.G. and V.M., on behalf of themselves individually and as next friends on behalf of their child, Y.T.; M.W., on behalf of herself individually and as next friend on behalf of her son, E.H.; A.D., on behalf of herself individually and as next friend on behalf of her son, D.D.; N.S., on behalf of himself individually and as next friend on behalf of his child, K.S.; E.H.1, on behalf of herself individually and as next friend on behalf of her child, E.H.2; E.E.G., on behalf of herself individually and as next friend on behalf of her son, Y.A.; A.G., on behalf of herself individually and as next friend on behalf of her sons, S.B. and K.B., Individually and on Behalf of Others Similarly Situated,

Plaintiffs,

- against -

NEW YORK CITY DEPARTMENT OF EDUCATION; NEW YORK CITY BOARD OF EDUCATION; CARMEN FARIÑA, in her official capacity as Chancellor of the New York City School District; NEW YORK STATE EDUCATION DEPARTMENT; COMMISSIONER JOHN B. KING, in his official capacity as Commissioner of the New York State Education Department,

Defendants.

13 Civ. 4639(SAS)

**Original Filed By ECF**

---

## STATE DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Eric T. Schneiderman
Attorney General of the State of New York
*Attorney for State Defendants*
120 Broadway, 24th Floor
New York, New York 10271
(212) 416-8426
william.taylor@ag.ny.gov

WILLIAM J. TAYLOR, JR.
MICHAEL R. KLEKMAN
Assistant Attorneys General
    *Of Counsel*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND ................................................................................................................ 2

A.     Legal Framework ...................................................................................................... 2

B.     Relevant State Regulations: 8 N.Y.C.R.R. §§ 200.6(j)(2)(iii) and 200.7(b)(4) ................... 4

C.     SED's Actions and Communications to Private Schools and DOE
Regarding an Apparent Tension Between Their Provision
of Related Services and the Relevant State Education Regulations ................................... 6

D.     Plaintiffs' Motion for Class Certification .......................................................... 10

        1. The Proposed NPS Class .................................................................... 11
        2. The Proposed Autism Services Class .................................................. 12

LEGAL STANDARD ....................................................................................................... 13

ARGUMENT .................................................................................................................... 14

POINT I       PLAINTIFFS FAIL TO SATISFY THEIR BURDEN UNDER
                RULE 23 WITH RESPECT TO THE PROPOSED NPS CLASS ........................ 14

A.     Plaintiffs Fail to Demonstrate Commonality .................................................... 14
B.     Plaintiffs Fail to Demonstrate Typicality ......................................................... 19
C.     Plaintiffs Do Not Satisfy Rule 23(b)(2) ............................................................ 20
D.     Plaintiffs Fail to Demonstrate that the Proposed NPS Class Is Ascertainable ................. 21

POINT II      PLAINTIFFS FAIL TO SATISFY THEIR BURDEN UNDER RULE
                23 WITH RESPECT TO THE PROPOSED AUTISM SERVICES CLASS ........ 22

POINT III     CLASS CERTIFICATION IS UNWARRANTED BECAUSE IT IS
                UNNECESSARY ................................................................................................ 24

CONCLUSION ................................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*A.D.* v. *Bd. of Educ. of City Sch. Dist. of City of N.Y.*,
690 F. Supp. 2d 193 (S.D.N.Y. 2010) ..................................................................23

*Bd. of Educ.* v. *O'Shea*,
353 F. Supp. 2d 449 (S.D.N.Y. 2005) ...................................................................4

*Berger* v. *Heckler*,
771 F.2d 1556 (2d Cir. 1985) ...................................................................... 24-25

*Brecher* v. *Republic of Argentina*,
--- F.3d ----, 2015 WL 5438797 (2d Cir. Sept. 16, 2015) ........................... 13, 21-22

*Bryant* v. *N.Y. State Educ. Dep't*,
692 F.3d 202 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 2022 (2013) ...................... 5-6

*C.F.* v. *N.Y.C. Dep't of Educ.*,
746 F.3d 68 (2d Cir. 2014) ...................................................................................3

*Califano* v. *Yamasaki*,
442 U.S. 682 (1979) ...........................................................................................13

*Charrons* v. *Pinnacle Grp. N.Y. LLC*,
269 F.R.D. 221 (S.D.N.Y. 2010) .........................................................................21

*Comcast Corp.* v. *Behrend*,
133 S. Ct. 1426 (2013) ...................................................................................1, 23

*D.L.* v. *District of Columbia*,
713 F.3d 120 (D.C. Cir. 2013) ............................................................................18

*Davis* v. *City of New York*,
296 F.R.D. 158 (S.D.N.Y. 2013) .........................................................................15

*Davis* v. *Smith*,
607 F.2d 535 (2d Cir. 1979) ...............................................................................25

*Fernandez* v. *Wells Fargo Bank, N.A.*,
Nos. 12 Civ. 7193, 7194 (PKC), 2013 WL 4540521 (S.D.N.Y. Aug. 28, 2013) .. 16, 19-20, 23

*Flores* v. *Anjost Corp.*,
284 F.R.D. 112 (S.D.N.Y. 2012) .....................................................................16, 20

*Floyd* v. *City of New York*,
    283 F.R.D. 153 (S.D.N.Y. 2012) ........................................................................21

*Forts* v. *Ward*,
    621 F.2d 1210 (2d Cir. 1980).............................................................................24

*Frank G.* v. *Bd. of Educ. of Hyde Park*,
    459 F.3d 356 (2d Cir. 2006)................................................................................4

*Galvan* v. *Levine*,
    490 F.2d 1255 (2d Cir. 1973)............................................................... 2, 14, 24-25

*Gen. Tel. Co. of Sw.* v. *Falcon*,
    457 U.S. 147 (1982).........................................................................................14

*Halliburton Co.* v. *Erica P. John Fund, Inc.*,
    134 S. Ct. 2398 (2014)...................................................................................1, 23

*Haus* v. *City of New York*,
    No. 03 Civ. 4915 (RWS) (MHD), 2011 U.S. Dist. LEXIS 155735 (S.D.N.Y. Aug. 31,
    2011) ...........................................................................................................19

*H.C.* v. *Katonah-Lewisboro Union Free Sch. Dist.*,
    No. 09 Civ. 10563 (PED), 2012 WL 2708394 (S.D.N.Y. May 24, 2012), *aff'd*, 528 F.
    App'x 64 (2d Cir. 2013)....................................................................................23

*In re Initial Pub. Offering Sec. Litig.*,
    471 F.3d 24 (2d Cir. 2006)................................................................................14

*Jamie S.* v. *Milwaukee Pub. Schs.*,
    668 F.3d 481 (7th Cir. 2012) ....................................................................... 18-19

*Johnson* v. *Nextel Commc'ns Inc.*,
    780 F.3d 128 (2d Cir. 2015)..............................................................................15

*Laumann* v. *NHL*,
    --- F. Supp. 3d ----, 2015 WL 2330107 (S.D.N.Y. May 14, 2015).........................21

*Ligon* v. *City of New York*,
    288 F.R.D. 72 (S.D.N.Y. 2013) ........................................................................18

*Ligon* v. *City of New York*,
    925 F. Supp. 2d 478 (S.D.N.Y. 2013).................................................................18

*Lincoln CERCPAC* v. *Health & Hosps. Corp.*,
    920 F. Supp. 488 (S.D.N.Y. 1996)................................................................ 24-25

*Lunceford* v. *D.C. Bd. of Educ.*,
   745 F.2d 1577 (D.C. Cir. 1984) (R.B. Ginsburg, J.)................................................4

*Marisol A.* v. *Giuliani*,
   126 F.3d 372 (2d Cir. 1997)..........................................................................19

*M.O.* v. *N.Y.C. Dep't of Educ.*,
   793 F.3d 236 (2d Cir. 2015)............................................................................2

*Mothersell* v. *City of Syracuse*,
   289 F.R.D. 389 (N.D.N.Y. Mar. 8, 2013)..........................................................18

*Moreira* v. *Sherwood Landscaping, Inc.*,
   No. CV 13-2640 (AKT), 2015 WL 1527731 (S.D.N.Y. Mar. 31, 2015) ...............................19

*R.A-G.* v. *Buffalo City Sch. Dist. Bd. of Educ.*,
   No. 12-CV-960S, 2013 WL 3354424 (W.D.N.Y. July 3, 2013),
   *aff'd*, 569 F. App'x 41 (2d Cir. 2014).................................................................18

*R.A.G.* v. *Buffalo City Sch. Dist. Bd. of Educ.*,
   569 F. App'x 41 (2d Cir. 2014) ....................................................................18-19

*R.B.* v. *N.Y.C. Dep't of Educ.*,
   589 F. App'x 572 (2d Cir. 2014) ....................................................................23

*R.E.* v. *N.Y.C. Dep't of Educ.*,
   694 F.3d 167 (2d Cir. 2012)........................................................................3, 23

*Rambarran* v. *Dynamic Airways, LLC*,
   No. 14-cv-10138 (KBF), 2015 WL 4523222 (S.D.N.Y. July 27, 2015) .............. 14, 16-17, 20

*Ruiz* v. *Citibank, N.A.*,
   Nos. 10 Civ. 5950, 10 Civ. 7304 (KPF)(RLE), 2015 WL 1254820 (S.D.N.Y. Mar. 19,
   2015) ............................................................................................15-17, 23

*Taylor* v. *Zucker*,
   No. 14-CV-05317 (CM), 2015 WL 4560739 (S.D.N.Y. July 27, 2015) ...................19-20, 23

*Teamsters Local 445 Freight Div. Pension Fund* v. *Bombardier Inc.*,
   546 F.3d 196 (2d Cir. 2008)........................................................................13-14

*Wal-Mart* v. *Dukes*,
   131 S. Ct. 2541 (2011) ............................................................................ *passim*

*Walczak* v. *Fla. Union Free Sch. Dist.*,
   142 F.3d 119 (2d Cir. 1998)............................................................................3

*White* v. *Western Beef Props., Inc.*,
    No. 07-CV-2345 (RJD) (JMA), 2011 WL 6140512 (E.D.N.Y. Dec. 9, 2011)..................16, 23

## STATUTES, RULES, AND REGULATIONS

Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* ................................ *passim*

Fed. R. Civ. P. 23 ...................................................................................................... *passim*

34 C.F.R.
    § 300.34....................................................................................................................5
    §§ 300.320-322 ........................................................................................................3
    § 300.323..................................................................................................................3
    § 300.511..................................................................................................................4
    § 300.514..................................................................................................................4
    § 300.516..................................................................................................................4

New York State Education Law
    § 4402......................................................................................................................3
    § 4404......................................................................................................................4

8 N.Y.C.R.R.
    § 200.1..................................................................................................................4-5
    § 200.4......................................................................................................................4
    § 200.5......................................................................................................................4
    § 200.6..................................................................................................................4-7
    § 200.7..................................................................................................................4-7
    § 200.13..................................................................................................................24
    §§ 279.1-279.14 ......................................................................................................4

Defendants New York State Education Department ("SED") and Commissioner John B. King, in his official capacity as Commissioner of SED[1] (the "Commissioner") (collectively, the "State Defendants"), by their attorney, Eric T. Schneiderman, Attorney General of the State of New York, respectfully submit this memorandum of law in opposition to Plaintiffs' motion for class certification, filed August 28, 2015 (ECF Docket No. 92), on the grounds that Plaintiffs cannot satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

As the Supreme Court has held, "plaintiffs wishing to proceed through a class action must actually *prove* -- not simply plead -- that their proposed class satisfies the requirements of Rule 23." *Halliburton Co.* v. *Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2412 (2014) (citing *Wal-Mart* v. *Dukes*, 131 S. Ct. 2541 (2011), and *Comcast Corp.* v. *Behrend*, 133 S. Ct. 1426 (2013)). This requires a "rigorous analysis," and, in this Circuit, the party seeking class certification must prove each element of Rule 23 by a preponderance of the evidence. Plaintiffs have not come close to meeting that burden here.

Plaintiffs allege two classes in their motion -- the proposed "NPS Class" and the proposed "Autism Services Class" -- based on two asserted "blanket" policies of Defendants: the alleged "NPS Directives" and the alleged "Autism Services Policies and Practices." But they have wholly failed to demonstrate, let alone through the "significant proof" required, *Wal-Mart*, 131 S. Ct. at 2553, that either alleged policy exists or has ever affected Plaintiffs or any other proposed class member.

After the Supreme Court's decision in *Wal-Mart*, that is the end of the matter. Plaintiffs' motion should be denied, as to both the proposed NPS Class and the proposed Autism Services

---

[1] Commissioner King resigned as Commissioner of Education effective January 2, 2015. As of July 6, 2015, the Commissioner of Education is MaryEllen Elia.

Class, because they failed to meet their burden to demonstrate commonality, as required by Rule 23(a)(2); have failed to demonstrate typicality, as required by Rule 23(a)(3); have failed to satisfy the "cohesiveness" requirement of Rule 23(b)(2); and have not shown either of their vague proposed class definitions meets Rule 23's "implied requirement of ascertainability." *See infra* Points I-II.  And, in any event, under the doctrine established by Second Circuit's decision in *Galvan* v. *Levine*, 490 F.2d 1255 (2d Cir. 1973), certification is unwarranted here because it is unnecessary.  *See infra* Point III.

Accordingly, for all these reasons, discussed in detail below, Plaintiffs' motion for class certification should be denied in its entirety.

## BACKGROUND

A.    **Legal Framework**

The Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* (the "IDEA") is comprehensive federal legislation that funds and regulates the education of children with disabilities.[2]  Federal assistance to states under the IDEA is conditioned upon the existence of policies and procedures that ensure that children with disabilities are provided certain substantive opportunities, including a "free appropriate public education" ("FAPE")[3], and procedural protections.  *See* 20 U.S.C. § 1412(a).  Responsibilities are divided between local educational agencies such as defendant New York City Department of Education ("DOE"), which in most cases are the direct providers of special education programs and services, *see id.* § 1413, and state educational agencies such as SED, which are given general supervisory authority, *see id.* §

---

[2] The IDEA was reauthorized and revised by the Individuals with Disabilities Education Improvement Act of 2004 ("IDEIA"), Pub. Law 108-446, 118 Stat. 2647.

[3] "A FAPE consists of special education and related services tailored to meet the unique needs of a particular child, which are reasonably calculated to enable the child to receive educational benefits . . . ."  *M.O.* v. *N.Y.C. Dep't of Educ.*, 793 F.3d 236, 238-39 (2d Cir. 2015) (citations and internal quotation marks omitted).

1412(a)(11)(A).  In New York, local school districts are required to develop an individualized

education program ("IEP") for each child with a disability in their jurisdictions and to review

and, if appropriate, revise such IEP annually.  *See* N.Y. Educ. Law § 4402(1)(b)(2); 8

N.Y.C.R.R. § 200.4(d)(2) and (e); *see also* 20 U.S.C. § 1414(d)(2)(A); 34 C.F.R. § 300.323(a).

These IEPs, developed by a committee including the child's parents and educators, (the "CSE")

describe the child's performance, list the services to be provided, and set out a series of annual

and short-term goals.  *See* 20 U.S.C. § 1414(d)(1); 34 C.F.R. §§ 300.320-322; N.Y. Educ. Law §

4402(1); 8 N.Y.C.R.R. § 200.4(d)(2).

"The IDEA requires that an IEP be reasonably calculated to enable the child to receive

educational benefits."  *C.F.* v. *N.Y.C. Dep't of Educ.*, 746 F.3d 68, 72 (2d Cir. 2014) (quoting

*R.E.* v. *N.Y.C. Dep't of Educ.*, 694 F.3d 167, 175 (2d Cir. 2012)) (internal quotation marks

omitted).  As the Second Circuit has explained, however, "[t]he purpose of the Act was more to

open the door of public education to handicapped children on appropriate terms than to guarantee

any particular level of education once inside."  *Id.* (quoting *Walczak* v. *Fla. Union Free Sch.*

*Dist.*, 142 F.3d 119, 130 (2d Cir. 1998)) (internal quotation marks omitted).  "The IDEA's

'appropriate' educational standard does not require that a child be provided with the optimal

programmatic alternative," *id.*, or, indeed, "any specific level of educational benefits," *Walczak*,

142 F.3d at 130.  "Rather, it calls only for selection of a program that provides a 'basic floor of

opportunity' that is 'likely to produce progress, not regression.'"  *C.F.*, 746 F.3d at 72 (quoting

*Walczak*, 142 F.3d at 130).  "[B]ecause public resources are not infinite, federal law 'does not

secure the best education money can buy; it calls upon government, more modestly, to provide

an appropriate education for each [disabled] child.'"  *Id.* (quoting *Walczak*, 142 F.3d at 130

(quoting *Lunceford* v. *D.C. Bd. of Educ.*, 745 F.2d 1577, 1583 (D.C. Cir. 1984) (R.B. Ginsburg, J.))).

To challenge their child's educational program or placement, including the services provided for on the IEP, parents may present a complaint to the local school district and request an "impartial due process hearing," 20 U.S.C. § 1415(f)(1)(A); 34 C.F.R. § 300.511; N.Y. Educ. Law § 4404(1)(a); 8 N.Y.C.R.R. §§ 200.5(i)-(j), conducted before an impartial hearing officer ("IHO") designated by the school district.  *See* N.Y. Educ. Law § 4404(1)(c); 8 N.Y.C.R.R. §§ 200.1(x), 200.2(b)(9), 200.2(e)(1), 200.5(j)(3).  The decision by the IHO may be appealed to a State Review Officer ("SRO"), who is independent of, and does not report to, the SED office responsible for the general supervision of educational programs for students with disabilities. *See* 20 U.S.C. § 1415(g); 34 C.F.R. § 300.514(b); N.Y. Educ. Law § 4404(2); 8 N.Y.C.R.R. §§ 200.5(k), 279.1-279.14.  And the SRO's decision may, in turn, be appealed through a civil action in federal or state court.  *See* 20 U.S.C. §§ 1415(i)(1)(B), 1415(i)(2)(A); 34 C.F.R. §§ 300.514(d), 300.516; N.Y. Educ. Law § 4404(3).

**B.**     **Relevant State Regulations: 8 N.Y.C.R.R. §§ 200.6(j)(2)(iii) and 200.7(b)(4)**

"New York has set forth regulations to implement the goals of the IDEA, which 'appear to track the IDEA closely.'"  *Frank G.* v. *Bd. of Educ. of Hyde Park*, 459 F.3d 356, 363 (2d Cir. 2006) (quoting *Bd. of Educ.* v. *O'Shea*, 353 F. Supp. 2d 449, 454 (S.D.N.Y. 2005)); *see* 8 N.Y.C.R.R. § 200.1 *et seq.*  Two such longstanding regulations, though unmentioned in Plaintiffs' motion papers, are of particular relevance here, with respect to the provision of special

4

education and related services[4] by State-approved private schools[5]: 8 N.Y.C.R.R. §

200.6(j)(2)(iii) and 8 N.Y.C.R.R. § 200.7(b)(4).

      8 N.Y.C.R.R. § 200.6(j)(2)(iii) provides that "no contract for the placement of a student

with a disability shall be approved for purposes of State reimbursement unless the proposed

placement offers the *instruction and services* recommended on the student's IEP."  8 N.Y.C.R.R.

§ 200.6(j)(2)(iii) (emphasis added).  8 N.Y.C.R.R. § 200.7(b)(4) further requires that the length

of a school day for a State-approved private school must include both "instructional services and

related services."  *Id.* § 200.7(b)(4).  Thus, together, these regulations make clear that a State-

approved private school should accept only those students for which it can provide all the special

education and related services set forth on the student's IEP, and can do so during the course of a

school day.  (DeLorenzo Decl. ¶¶ 15,17.)  As the Second Circuit has held, such statewide

education regulations fully comport with the IDEA.  *Bryant* v. *N.Y. State Educ. Dep't*, 692 F.3d

---

[4] The term "related services" is defined in essentially identical language under both federal and
state law.  *See* 20 U.S.C. § 1401(26); 34 C.F.R. § 300.34; 8 N.Y.C.R.R. § 200.1(qq).  It means,
in short, "developmental, corrective and other supportive services that a child needs to benefit
from special education."  (Declaration of James P. DeLorenzo, dated Sept. 30, 2015
("DeLorenzo Decl.") ¶ 6.)  Examples include speech-language pathology, audiology services,
interpreting services, psychological services, physical therapy, occupational therapy,
rehabilitation counseling services, parent counseling and training, and assistive technology
services.  (*Id.*); *see* 20 U.S.C. § 1401(26); 34 C.F.R. § 300.34; 8 N.Y.C.R.R. § 200.1(qq).

[5] As used herein, the term "State-approved private schools" includes (i) Chapter 853 schools,
which are operated by private agencies and provide day and/or residential programs; (ii) Special
Act School Districts, which are public schools that were created by special action of the
legislature for purpose of providing education services to students who reside in child care
institutions; and (iii) State-supported schools, which are privately operated programs established
under Education Law § 4201 to provide educational services to students with disabilities with
deafness, blindness, severe emotional disturbance, or severe physical disabilities.  (DeLorenzo
Decl. ¶ 7 (referring to these schools as "approved private schools").)  Though it is not clear, it
appears that Plaintiffs refers to these same schools (perhaps also including the two State-operated
schools) as "NPS Programs."  (DeLorenzo Decl. ¶ 7; *see* Fourth Amended Complaint, dated June
18, 2015 (ECF Docket No. 79) ("FAC") ¶ 94; Memorandum of Law in Support of Plaintiffs'
Motion for Class Certification, Certification of Class Representatives, and Approval of Selection
of Counsel, dated June 25, 2015 (ECF Docket No. 93) ("Pls.' Mem.") at 16.)

202, 213-14 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 2022 (2013).  8 N.Y.C.R.R. §§ 200.6(j)(2)(iii) and 200.7(b)(4) also serve important, and undisputed, educational purposes, as they seek to ensure that a disabled student receive instructional and related services only at an appropriate educational placement and that there exists in this State the essential "continuity with the  child's special education program." (DeLorenzo Decl. ¶ 27; *see id.* ¶¶ 14, 17.)[6]  In addition, these regulations make clear that the burden here in finding and securing necessary services must not rest on the parents of a disabled child, as "the provision of special education and related services is a responsibility of NYCDOE and the schools, not the parents."  (*Id.* ¶ 16.)

Nothing in 8 N.Y.C.R.R. § 200.6(j)(2)(iii) or § 200.7(b)(4) affects DOE's obligations to undertake an individual assessment of each child's needs; nothing predetermines a child's course of education; and nothing precludes IEP teams from considering the full range of possible services and placements in securing an appropriate education for each disabled child. (*Id.* ¶¶ 4-6, 14-18, 27-29); *see Bryant*, 692 F.3d at 214.

## C. SED's Actions and Communications to Private Schools and DOE Regarding an Apparent Tension Between Their Provision of Related Services and the Relevant State Education Regulations

 In or around the summer of 2012, parents of a disabled child accepted by and placed at a State-approved private school in New York City raised a student-specific concern with SED relating to the provision of related services to their child.  (DeLorenzo Decl.  ¶ 12.)  Rather than the services being provided by the school during the course of the school day, in accordance with

---

[6] These interests exist, and are reflected in relevant educational policies, with respect to public schools as well.  (*See* Declaration of Elisa Hyman, dated June 25, 2015 ("Hyman Decl.") (ECF Docket No. 94) Ex. C (Albert Dep.) at 89-92.)

8 N.Y.C.R.R. §§ 200.6(j)(2)(iii) and 200.7(b)(4), the student's parents were being required to obtain a related service on their own, through a "related service authorization," or "RSA."  (*Id.*)[7]

After further investigation into the matter, SED's Office of Special Education learned that this was not an isolated incident in New York City.  (*Id.* ¶ 12.)  The Office of Special Education then sought data from DOE to determine, more specifically, the extent to which this practice was occurring.  (*Id.*)  Upon review of that data, the Office of Special Education learned that many State-approved private schools serving disabled children in New York City were relying on RSAs to provide related services to students enrolled in their programs, in tension with relevant state education regulations and the important educational purposes they were designed to serve.  (*Id.* ¶ 13); *see* 8 N.Y.C.R.R. § 200.6(j)(2)(iii); *id.* § 200.7(b)(4); *supra* pp. 4-6.

In response to this determination of the apparent widespread use of RSAs in State-approved private schools serving New York City students, in July 2012, SED's Assistant Commissioner for the Office of Special Education James P. DeLorenzo contacted DOE's Deputy Chancellor for the Division of Students with Disabilities and English Language Learners Corinne Rello-Anselmi.  (DeLorenzo Decl. ¶ 19.)  They agreed that DOE's practice of regularly issuing RSAs to parents whose children were accepted by and placed at State-approved private schools did not serve the parents' or the children's interests and must come to an end.  (*Id.*)  They also

---

[7] A "related service authorization," or "RSA" is "essentially a voucher for the parents to find an appropriately licensed credentialed provider to provide the related services," when the local school district does not the staff available to provide the services.  (Hyman Decl. Ex. C (Albert Dep.) at 240:21-24; DeLorenzo Decl. ¶ 11.)  DOE issues such RSAs to parents whose children are required to receive particular related services as set forth in their IEPs "in circumstances when, due to personnel shortages, NYCDOE is unable to provide the services."  (DeLorenzo Decl. ¶ 11.)  "An RSA is issued only when the local school district cannot provide the related service."  (*Id.*)

agreed, however, that, most importantly, they needed to ensure that there was no disruption of services to students who had been affected by the RSA practice.  (*Id.*)

Thus, Assistant Commissioner DeLorenzo and Deputy Chancellor Rello-Anselmi agreed that a transition process would be necessary.  (*Id.*)  During this transition process, State-approved private schools would have time to hire any additional staff, and obtain any necessary approvals, so that the schools would be able to provide all IEP-recommended services for students accepted by and enrolled in their programs.  (*Id.* ¶¶ 19, 23 & Ex. A.)  For any students who could not be appropriately served at the school, there would also be time to secure an alternative placement, if necessary, that could meet the student's needs as set forth on the IEP.  (*Id.*)  As Assistant Commissioner DeLorenzo made plain, "students currently receiving related services through an RSA need[ed] to continue to have the services provided until school-based services [we]re available or an alternative placement ha[d] been identified."  (*Id.* ¶ 19 & Ex. A.)

And it was always understood that the ultimate responsibility here was to provide each disabled child with a FAPE, as required by the IDEA.  (*Id.* ¶¶ 19-20, 23, 25, 27-29.)  Thus, even after this transition process ended, if it were determined by a local CSE that, in order to ensure that a student received a FAPE, the only appropriate placement would be in a State-approved private school accompanied by the issuance of RSAs, such placement would be made and such RSAs could, and would, be issued.  (*Id.* ¶¶ 25, 27-29.)  As discussed further below, that remains the practice to this day.  (*Id.*)

SED's Office of Special Education also corresponded, during the summer of 2012, with the State-approved private schools serving New York City students regarding this RSA issue. (*Id.* ¶ 20 & Exs. B-C.)  Like the communications with DOE, these letters explained that, as State education regulations provided, a State-approved private school should accept only those

students for whom the school could provide all the special education and related services set forth on the student's IEP, during the course of a school day, and without the need for the issuance of RSAs. (*Id.*) SED thus made clear that the widespread issuance by DOE of RSAs to parents of children attending State-approved private schools would have to come to an end. (*Id.*) The letters also explained the transition process, during which the schools would be able to hire any necessary additional staff to meet the related services needs of enrolled students or could refer a student back to the local CSE for consideration of possible amendment to the IEPs, if appropriate, or an alternative, and appropriate, placement that could meet the student's needs. (*Id.*) SED stressed, as it did with DOE, that any alternative service recommendations or placement decisions "may not be based on related service availability at the [approved private school] but must be based on demonstrated student need or lack thereof." (*Id.* Ex. C.)

The transition process continued through 2012 and 2013. During this time, SED, and in particular the New York City office of the Special Education Quality Assurance Unit ("SEQA") of the Office of Special Education, provided technical guidance and assistance to affected State-approved private schools. (*Id.* ¶¶ 21-24.) And, on May 30, 2013, Assistant Commissioner DeLorenzo personally met with all of the State-approved private schools impacted by this RSA issue to explain, once again, why it was required that students receive their related services from the school rather than through RSAs; how this served students' and parents' needs; and, significantly, how they would all ensure, throughout this process, that no student would go without his or her required related services. (*Id.* ¶¶ 21-22 & Ex. D.)[8]

---

[8] To ensure that they were aware of the RSA issue, the corrective actions being taken, and the applicable State regulations relating to the provision of related services for students with disabilities who are placed at State-approved private schools, Assistant Commissioner DeLorenzo also issued a field advisory to IHOs regarding the issue in September 2012. (*Id.* ¶ 22 n.2 & Ex. E.)

SED also gathered data, from both the schools and DOE, to assure that this process was progressing as intended, and was appropriately serving student's educational needs.  (*Id.* ¶¶ 23-26.)  SED continues to monitor this RSA issue on a regular basis.  (*Id.* ¶¶ 25-26.)

But, as noted, flexibility remains.  If DOE, through a CSE, determines that, in order to ensure the provision of a FAPE, the appropriate placement for a student is in a State-approved private school with RSAs, then DOE should make such placement and any necessary RSAs should be issued.  (*Id.* ¶¶ 25, 27-29.)  DOE has contacted SED to request approval for the issuance of RSAs under a number of such circumstances.  (*Id.* ¶ 25.)  To date, every request that has been made has been approved.  (*Id.*)  And, under no circumstances has or will SED's actions to address this RSA issue affect a student's right to FAPE or reduce any instructional or related services required pursuant to a student's IEP.  (*Id.* ¶ 29.)

In short, contrary to Plaintiffs' assertions (*see* Pls.' Mem. at 19-24; FAC ¶¶ 93-130), SED has no policy and has issued no directive that "children would no longer be able to receive special education and related services unless those services were offered by or available through the approved private school that the child was or would be attending."  (DeLorenzo Decl. ¶¶ 25, 27.)  Nor, despite what Plaintiffs also appear to assert (*see* Pls.' Mem. at 32-35), does SED have any policies or procedures limiting the services that a child with autism may receive.  (DeLorenzo Decl. ¶ 30.)  As discussed above, any such determinations regarding FAPE and the appropriate IEP for a disabled child are and continue to be, in accordance with the IDEA, individualized assessments to be made by local CSEs.  (*Id.* ¶¶ 4-6, 25, 27-29.)

## D.    **Plaintiffs' Motion for Class Certification**

On August 28, 2015, Plaintiffs filed the present motion for class certification.  (ECF Docket Nos. 92-94.)  Plaintiffs seek certification by the Court, pursuant to Rule 23(a) and (b)(2)

of the Federal Rules of Civil Procedure, of two separate classes, each with its own sub-classes: (i) the proposed "NPS Class" and (ii) the proposed "Autism Services Class." (Pls.' Mem. at 1-3; *see* Notice of Motion, dated June 25, 2015 (ECF Docket No. 92) ("Mot.") ¶ 1.)

### 1.     The Proposed NPS Class

Plaintiffs assert that the proposed NPS Class is defined as follows: "(i) children with disabilities under the meaning of the IDEA who: (a) reside in New York City; (b) have IEPs; (c) were recommended for or attended an NPS Program; and (d) have been subject to the NPS Directives; and (ii) those who will, in the future, meet the criteria of (i)." (Mot. ¶ 1.)

The term "NPS Program" is not clearly defined in the motion papers, but, as used in the Fourth Amended Complaint, it appears to consist of three types of programs: (1) "state-approved private schools created by Chapter 853 of the Laws of 1976;" (2) "state-supported schools for students who are deaf, blind, and/or severely physically or emotionally disabled under New York State Education Law § 4201"; and (3) "Special Act School Districts." (FAC ¶ 94.)[9]  The term "NPS Directives" also is not clearly defined.  Plaintiffs, though, appear to characterize it as an alleged directive by SED "that children would no longer be able to receive special education and related services unless those services were offered by or available directly through the NPS Program that the child was or would be attending." (Pls.' Mem. at 19-20.)[10]  Plaintiffs D.D., K.S., Y.A., and E.H. seek to be certified as representatives of the proposed NPS Class. (Pls.' Mem. at 2.)

Plaintiffs also seek to certify two subclasses of the proposed NPS Class.  The proposed "Due Process NPS Subclass" is defined as "(a) members of the NPS Class who are, or were,

---

[9] *See supra* note 5.

[10] As demonstrated above, *see supra* pp. 10, no such directive has been issued or exists. (DeLorenzo Decl. ¶¶ 25, 27-29.)

receiving or will receive Additional NPS Services; and (b) who invoked or will invoke their due process and obtained stay-put rights under 20 U.S.C. § 1415(j)."  (Mot. ¶ 1.)  The proposed "Lost Services NPS Subclass" is defined as "(i) members of the NPS Class whose Additional NPS Services were removed from their IEPs; and (ii) all those who will, in the future, meet the criteria of (i)."  (*Id.*)  The term "Additional NPS Services" is vaguely defined only as "special education services that are not available directly from an NPS Program."  (Pls.' Mem. at 2 n.5.)[11]  Plaintiffs D.D., K.S., Y.A., and E.H. seek to be certified as representatives of the proposed Due Process NPS Subclass, and all but E.H. also seek to be certified as representatives of the proposed Lost Services NPS Class.  (Pls.' Mem. at 2.)

### 2. The Proposed Autism Services Class

Plaintiffs also seek to certify the proposed Autism Services Class, which is defined as "(i) children diagnosed with [Autism Spectrum Disorder] under the DSM-V, or classified as autistic by the City Defendants under the IDEA, who: (a) reside in New York City; (b) have IEPs; and (c) have been subject to the Defendants' Autism Services Policies and Practices; and (ii) those who, in the future, will meet the criteria of (i)."  (Mot. ¶ 1; Pls.' Mem. at 2-3.)[12]  The term "Autism Services Policies and Practices," which is at the crux of this definition, is given no clear meaning by Plaintiffs, and it appears to be based entirely on Plaintiffs' generalized, unspecified, and unsupported assertions that "Defendants restrict the ability of IEP Teams to recommend

---

[11] It appears that this may be Plaintiffs' attempt to reference the RSA issue, which is explained in detail above.  *See supra* pp. 6-10.

[12] The proposed "Due Process Autism Subclass" is defined as "members of the Autism Services Class who have won or will win IHO or SRO decisions, court orders, or entered in resolution agreements for Autism Services and who have been or will be subject to the Autism Services Policies and Practices."  (Mot. ¶ 1.)

Autism Services." (FAC ¶ 78; *see* Pls.' Mem. at 3, 32-35.)[13]  Plaintiffs D.D., K.S., Y.A., E.H.,

S.B., K.B., Y.T., and E.H.2 seek to be certified as representatives of both the proposed Autism

Services Class and the proposed Due Process Autism Subclass. (Mot. ¶ 2.)

## LEGAL STANDARD

"The class action is 'an exception to the usual rule that litigation is conducted by and on

behalf of the individual named parties only.'" *Wal-Mart*, 131 S. Ct. at 2550 (quoting *Califano* v.

*Yamasaki*, 442 U.S. 682, 700-01 (1979)). Plaintiffs seeking certification of a class must prove

"by a preponderance of the evidence" that their proposed  class meets Rule 23(a)'s "four

requirements -- numerosity, commonality, typicality, and adequate representation --" and, if

those requirements are met, that the class is maintainable under at least one of the subdivisions of

Rule 23(b). *Id.* at 2548, 2550; *Teamsters Local 445 Freight Div. Pension Fund* v. *Bombardier

Inc.*, 546 F.3d 196, 202 (2d Cir. 2008). Here, Plaintiffs rely on Rule 23(b)(2), which applies

when "the party opposing the class has acted or refused to act on grounds that apply generally to

the class, so that final injunctive relief or corresponding declaratory relief is appropriate

respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). In addition, the Second Circuit has

recognized an "implied requirement of ascertainability" as a prerequisite to class certification.

*Brecher* v. *Republic of Argentina*, --- F.3d ----, 2015 WL 5438797, at *2 (2d Cir. Sept. 16, 2015).

"Rule 23 does not set forth a mere pleading standard." *Wal-Mart*, 131 S. Ct. at 2551.

Rather, as the Supreme Court has explained, Plaintiffs bear the burden of "affirmatively

demonstrat[ing]" that each element of Rule 23 is satisfied. *Id.* "In making a determination as to

whether class certification is appropriate, the district court must receive enough evidence -- by

---

[13] Indeed, it is not clear whether this proposed Autism Services Class, or the proposed Autism
Due Process Subclass, is even being asserted as against the State Defendants. (*See* Pls.' Mem. at
3, 32-35); *infra* Point II.

affidavits, documents, or testimony -- to be satisfied by a preponderance of the evidence that each Rule 23 requirement has been met." *Rambarran* v. *Dynamic Airways, LLC*, No. 14-cv-10138 (KBF), 2015 WL 4523222, at *4 (S.D.N.Y. July 27, 2015) (citing *Teamsters Local 445*, 546 F.3d at 202-04).

This is a "rigorous analysis." *Wal-Mart*, 131 S. Ct. at 2551 (quoting *Gen. Tel. Co. of Sw.* v. *Falcon*, 457 U.S. 147, 160-61 (1982)) (internal quotation marks omitted). "Courts in this Circuit have consistently denied class certification where the party seeking certification failed to present sufficient evidence as to one or more Rule 23 elements." *Rambarran*, 2015 WL 4523222, at *4 (citing cases). And, significantly, the district court's "obligation to make a determination that every Rule 23 element is met before certifying a class" is not lessened "just because of some or even full overlap of that requirement with a merits issue." *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006); *see Wal-Mart*, 131 S. Ct. at 2551-52.

Finally, even if the requirements of Rule 23 are met, under the doctrine established by the Second Circuit's decision in *Galvan* v. *Levine*, 490 F.2d 1255 (2d Cir. 1973), certification of a Rule 23(b)(2) class is unwarranted where unnecessary.

## ARGUMENT

### POINT I

### PLAINTIFFS FAIL TO SATISFY THEIR BURDEN UNDER RULE 23 WITH RESPECT TO THE PROPOSED NPS CLASS

#### A.    Plaintiffs Fail to Demonstrate Commonality

To meet the commonality requirement of Rule 23(a)(2), Plaintiffs must demonstrate that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). As the Supreme Court has warned, however, "[t]hat language is easy to misread, since '[a]ny competently crafted class complaint literally raises common questions.'" *Wal-Mart*, 131 S. Ct.

14

at 2551 (alteration in original) (citation omitted).  Thus, "[w]hat matters to class certification . . . is not the raising of common 'questions' -- even in droves -- but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (alteration and emphasis in original) (internal quotation marks and citation omitted); *see also, e.g.*, *Johnson* v. *Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) (a question is common to the class if it is "capable of classwide resolution -- which means that its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke" (quoting *Wal-Mart*, 131 S. Ct. at 2551) (internal quotation marks omitted)).

Here, while Plaintiffs appear to claim a number of common questions (*see* Pls.' Mem. at 27-31), in truth, their motion for class certification rests on a single assertion: that SED has a "blanket" policy that "children would no longer be able to receive special education and related services unless those services were offered or available directly through the particular NPS Program that the child was or would be attending."  (Pls.' Mem. at 19-20, 27-31.)  Without this "general policy" -- which Plaintiffs call the "NPS Directives" (*id.*) -- there is no necessary "glue" holding together the proposed class members' many disparate claims regarding their individual IEPs and educational placements.  *Wal-Mart*, 131 S. Ct. at 2552; *see, e.g.*, *Davis* v. *City of New York*, 296 F.R.D. 158, 166 n.49 (S.D.N.Y. 2013).  And, thus, there is no commonality.  *See Wal-Mart*, 131 S. Ct. at 2552.

As noted, Plaintiffs bear the burden here.  After *Wal-Mart*, it is clear that, to satisfy it, they must demonstrate the existence of the NPS Directives, the alleged "general policy" at issue, through "significant proof," and, in this Circuit, "by a preponderance of the evidence."  *Id.* at 2553; *see, e.g.*, *Ruiz* v. *Citibank, N.A.*, Nos. 10 Civ. 5950, 10 Civ. 7304 (KPF)(RLE), 2015 WL 1254820, at *6-12 (S.D.N.Y. Mar. 19, 2015) (holding that plaintiffs who seek to certify a class

15

on the basis of an alleged unlawful policy of defendants must "present qualitatively and quantitatively sufficient evidence demonstrating that policy"); *Fernandez* v. *Wells Fargo Bank, N.A.*, Nos. 12 Civ. 7193, 7194 (PKC), 2013 WL 4540521, at *1, *5-13 (S.D.N.Y. Aug. 28, 2013) (holding that plaintiffs did not demonstrate commonality where they "have not established by a preponderance of the evidence that the [putative class members] were subject to a common, New York-wide policy to limit their recorded hours or require off-the-clock work); *White* v. *Western Beef Props., Inc.*, No. 07-CV-2345 (RJD) (JMA), 2011 WL 6140512, at *5-6 (E.D.N.Y. Dec. 9, 2011) (holding that plaintiffs cannot establish class certification on the basis of an alleged unlawful policy of defendants "because the record does not contain 'significant proof' of the alleged policy").  They have not come close to doing so.

        To meet their evidentiary burden, courts expect Plaintiffs to produce "affidavits, statistical evidence, or both, tending to show the existence of a class of persons affected by [the alleged unlawful] policy or practice."  *Flores* v. *Anjost Corp.*, 284 F.R.D. 112, 125 (S.D.N.Y. 2012); *see, e.g.*, *Ruiz*, 2015 WL 1254820, at *7.  None has been submitted.  Although there are eight named Plaintiffs in this case, four of whom seek to be certified as representatives of the proposed NPS Class, no party affidavit has been proffered attesting that the alleged NPS Directives exists, or that it has ever been applied to any of the Plaintiffs.  *See Wal-Mart*, 131 S. Ct. at 2556 (holding that plaintiffs' submission of "some 120 affidavits reporting experiences of discrimination" was not enough to meet commonality burden).  And, likewise, though Plaintiffs' counsel has asserted that "just in [her] relatively small office alone, we have 22 kids who are part of the NPS class" (4/30/15 Tr. (ECF Docket No. 77) at 21:2-5), nothing has been submitted from any of them either.  *See, e.g.*, *Rambarran*, 2015 WL 4523222, at *6 (holding that plaintiffs did not satisfy their evidentiary burden on certification, and finding it particularly notable that, as

here, plaintiffs apparently "had access to putative class members" but submitted no evidence

from them).  Nor, despite Plaintiffs' assertions that the alleged NPS Directives was regularly

applied by local CSEs to harm disabled children and remove related services from their IEPs, do

Plaintiffs submit any evidence from IEP meetings showing even one occurrence of that.  *See,

e.g.*, *Ruiz*, 2015 WL 1254820, at \*9 (holding that anecdotal accounts of "31 named Plaintiffs,

Declarants, and Sample Opt-Ins" was not enough to satisfy commonality).

Instead, Plaintiffs grossly mischaracterize both the correspondence that SED sent to DOE

and approved private schools in 2012 and 2013 and the deposition testimony in this case to try to

invent the "general policy" that they need to support their certification motion.  (*See* Pls.' Mem.

at 19-24, 27-31.)  But, as discussed above, *see supra* pp. 6-10, the SED letters that Plaintiffs

point to here simply do not support their position.  *See, e.g.*, *Ruiz*, 2015 WL 1254820, at \*10 &

n.12 (rejecting a similar "misleading" attempt by plaintiffs to rely on management

correspondence to evidence a common policy).  Contrary to Plaintiffs' assertions, every

deponent, from the State Defendants and the City Defendants, testified that deciding the

appropriate special education and related services for a disabled child is, as it has always been,

"an individual student determination," and, if warranted "on a case-case basis" and "based on a

child's individual need," placement of a student at a State-approved with the provision of RSAs

remains an option.  (Hyman Decl. Ex. A (Donnellan Dep.) at 196:2-22; *id.* Ex. B (Johnson Dep.)

at 513:13-514:22; *id.* Ex. C (Albert Dep.) at 125:4-126:5.)[14]  And, in his accompanying

declaration, Assistant Commissioner DeLorenzo, whom Plaintiffs identify as having "generated"

---

[14] (*See also, e.g.*, Hyman Decl. Ex. A (Donnellan Dep.) at 16-22, 32-34, 38-39, 178, 196-99, 210, 213-14, 261-72, 274-75; *id.* Ex. B (Johnson Dep.) at 172-75, 345-46, 356-58, 478-79, 491-93, 513-15, 518-19, 533; *id.* Ex. C (Albert Dep.) at 47-48, 76-78, 81-87, 89-94, 97-102, 108-09, 111-12, 121-42, 158, 160-62, 164-65, 169-70, 175-76, 183-85, 187-88, 193-94, 208-10, 214-15, 218-20, 227-29, 231, 261-63.)

the "overall NPS Directive" (Pls.' Mem. at 20 n.52), has expressly affirmed that no such directive was ever issued and no such policy exists.  (DeLorenzo Decl.  ¶ 25, 27-29); *see supra* p. 10.[15]

The Second Circuit's recent unpublished decision in *R.A.G.* v. *Buffalo City School District Board of Education*, 569 F. App'x 41 (2d Cir. 2014), in which an injunction class was certified on an IDEA challenge, is not to the contrary.  There, unlike in this case, it was undisputed, that "a policy that is applied uniformly to all students that qualify for supplemental services under the IDEA" existed in the local school district.  *Id.* at 42; *see R.A-G.* v. *Buffalo City Sch. Dist. Bd. of Educ.*, No. 12-CV-960S, 2013 WL 3354424, at *9-11 (W.D.N.Y. July 3, 2013). As decisions from the D.C. and Seventh Circuits have made clear, however, where the existence of such a policy is in dispute and has not been established by plaintiffs, class certification in an IDEA action should be rejected on commonality grounds.  *See D.L.* v. *District of Columbia*, 713 F.3d 120, 127-28 (D.C. Cir. 2013) (class certification improper where plaintiffs alleged violations of various IDEA requirements, but failed to identify a single or uniform policy or practice that bridged all the individual cases); *Jamie S.* v. *Milwaukee Pub. Schs.*, 668 F.3d 481, 498 (7th Cir. 2012) (denying class certification where there was no "'significant proof' that [the

---

[15] In *Ligon* v. *City of New York*, 288 F.R.D. 72 (S.D.N.Y. 2013), this Court stated that "Plaintiffs do not have the burden of proving the existence of an unconstitutional practice or custom at the class certification stage." *Id.* at 82 n.59.  As discussed above, State Defendants submit that where, as here, a "general policy" is required to satisfy Rule 23's commonality element, proof of that policy's existence is required before a class may properly be certified.  State Defendants do not read this Court's statement in *Ligon* to hold anything different.  Unproven allegations of such a policy are simply insufficient under *Wal-Mart*. *See, e.g.*, *Mothersell* v. *City of Syracuse*, 289 F.R.D. 389, 394-400 (N.D.N.Y. Mar. 8, 2013); cases cited *supra* pp. 15-16.  But, in any event, the evidence submitted by plaintiffs and relied upon to find commonality in *Ligon* was extensive, consisting of plaintiff and non-party testimony, expert analysis, and documentation.  *Id.* at 82; *see Ligon* v. *City of New York*, 925 F. Supp. 2d 478, 489, 499-522, 545 n.461 (S.D.N.Y. 2013). As noted, the paltry evidentiary submissions by Plaintiffs here are not anywhere close to that.

school district] operated under child-find *policies* that violated the IDEA").[16]  That is precisely

the situation here.

Accordingly, for all these reasons, Plaintiffs' motion to certify the proposed NPS Class

should be denied for lack of commonality.

### B.      Plaintiffs Fail to Demonstrate Typicality

Rule 23(a)(3) provides that a class action may be maintained only if "the claims or

defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R.

Civ. P. 23(a)(3).  Typicality "is satisfied when each class member's claims arises from the same

course of events, and each class member makes similar legal arguments to prove the defendant's

liability."  *Marisol A.* v. *Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (internal quotation marks

omitted).  "The commonality and typicality requirements tend to merge into one another, so that

similar considerations animate analysis of Rule 23(a)(2) and (3)."  *Id.*  When an evaluation of the

plaintiff's claims "turn[s] on a case-by-case evaluation of each encounter," typicality (as well as

commonality) is not satisfied.  *Haus* v. *City of New York*, No. 03 Civ. 4915 (RWS) (MHD), 2011

U.S. Dist. LEXIS 155735, at *317 (S.D.N.Y. Aug. 31, 2011); *see, e.g.*, *Taylor*, 2015 WL

4560739, at *8-13; *Fernandez*, 2013 WL 4540521, at *13.

---

[16] Plaintiffs assert that "[c]ourts in the Second Circuit have often certified classes of students to
address systemic deficiencies in the public general and special education systems."  (Pls.' Mem.
at 13.)  But, tellingly, other than *R.A.G.* (which is discussed above), all of the cases they cite in
support of this assertion were handed down prior to the Supreme Court's decision in *Wal-Mart*.
(*See id.* at 13 & n.36.) As courts in this Circuit have observed, in light of *Wal-Mart*, "the analysis
of commonality and typicality has recently become stricter."  *Moreira* v. *Sherwood Landscaping,
Inc.*, No. CV 13-2640 (AKT), 2015 WL 1527731, at *11 (S.D.N.Y. Mar. 31, 2015) (internal
quotation marks omitted).  Indeed, as Judge McMahon recently noted in denying class
certification in an alleged systemic challenge against the State, this "type of case that was
routinely certified as a class action prior to . . . *Wal-Mart*," now does not "come close to
establishing the kind of commonality and typicality required after *Wal-Mart*."  *Taylor* v. *Zucker*,
No. 14-CV-05317 (CM), 2015 WL 4560739, at *7, 12 (S.D.N.Y. July 27, 2015).  Under that
"stricter" analysis, Plaintiffs have not come close to satisfying their certification burden.

Here, for the same reasons they do not satisfy the commonality requirement, *see supra* Point I.A, Plaintiffs also fail to meet their burden to establish typicality for the proposed NPS Class.  Without "significant proof" demonstrating the existence of the alleged NPS Directives by a preponderance of the evidence, which their submissions fall well short of on this motion, Plaintiffs cannot "show that they raise questions of fact or law, arising out of a single course of conduct or set of events, that are common to all putative class members and that their individual claims and circumstances are sufficiently similar to those of the absent class members so as to ensure that the named plaintiffs will press the claims of all class members."  *Flores*, 284 F.R.D. at 125; *see, e.g.*, *Fernandez*, 2013 WL 4540521, at *13.  Accordingly, certification should be denied here on both commonality and typicality grounds.  *See, e.g.*, *Taylor*, 2015 WL 4560739, at *8-13; *Fernandez*, 2013 WL 4540521, at *13.

Moreover, rather than supporting their cause, or satisfying their burden, Plaintiffs' submissions actually make the lack of typicality here even more evident.  For example, according to one of Plaintiffs' exhibits, just recently an IHO hearing an individual challenge by one of the class representatives, Y.A., found that any denial of FAPE to Y.A. could be "and has in fact been remedied" without consideration of the purported systemic relief sought in this action.  (Hyman Decl. Ex. M at 100.)  And, as noted, *see supra* Point I.A, as to all of the proposed class representatives and putative class members, the record is simply barren of evidence that their alleged injuries "arise[] from the same course of events," as Rule 23(a)(3) requires.  *Rambarran*, 2015 WL 4523222, at *8 (internal quotation marks and citation omitted).

### C.    Plaintiffs Do Not Satisfy Rule 23(b)(2)

Plaintiffs also fail to satisfy their burden for certification of a class under Rule 23(b)(2), which requires them to demonstrate that "the party opposing the class has acted or refused to act

on grounds that apply generally to the class, so that final injunctive relief or corresponding

declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  As

the Supreme Court held in *Wal-Mart*, "Rule 23(b)(2) applies only when a single injunction or

declaratory judgment would provide relief to each member of the class."  131 S. Ct. at 2557.

Here, for the same reasons Plaintiffs have not established commonality and typicality --*i.e.*,

because they have not demonstrated that SED has a policy that "children would no longer be able

to receive special education and related services unless those services were offered or available

directly through the particular NPS Program that the child was or would be attending" (Pls.'

Mem. at 19-20, 27-31); *see supra* Point I.A-I.B -- they have not met the requirements of Rule

23(b)(2) either.  *See Wal-Mart*, 131 S. Ct. at 2557; *see also, e.g.*, *Laumann* v. *NHL*, --- F. Supp.

3d ----, 2015 WL 2330107, at *7 (S.D.N.Y. May 14, 2015) ("cohesiveness" requirement of Rule

23(b)(2) "is similar, conceptually, to the commonality requirement under Rule 23(a)").

### D.    Plaintiffs Fail to Demonstrate that the Proposed NPS Class Is Ascertainable

As the Second Circuit recently clarified, to satisfy Rule 23's "implied requirement of

ascertainability," a class must be "sufficiently definite so that it is administratively feasible for

the court to determine whether a particular individual is a member."  *Brecher*, 2015 WL

5438797, at *2 (internal quotation marks and citation omitted).  While this Court has indicated

that "precise ascertainability" may not be required in the Rule 23(b)(2) context, *see Floyd* v. *City

of New York*, 283 F.R.D. 153, 171-72 (S.D.N.Y. 2012), (though, it should be noted, the Second

Circuit in *Brecher* made no distinction in that regard), Plaintiffs' proposed NPS Class still falls

well short.  *See, e.g.*, *Charrons* v. *Pinnacle Grp. N.Y. LLC*, 269 F.R.D. 221, 228 (S.D.N.Y. 2010)

("The Second Circuit has cautioned against certifying overbroad classes, even under Rule

23(b)(2), which requires a less precise definition that Rule 23(b)(3).").

As noted above, *see supra* pp. 11-12, the key terms of Plaintiffs' proposed class definition -- including "NPS Program," "NPS Directives," and "Additional Services" -- are left either undefined or not clearly defined.  Under these circumstances, and particularly where the proposed class definition includes not just presently qualifying members but those "who will, in the future," meet its vague criteria," the certification motion also should be denied because Plaintiffs have not demonstrated how determining class membership is administratively feasible, or, indeed, even possible.  *See Brecher*, 2015 WL 5438797, at *2.  Thus, along with the other grounds already discussed, class certification fails here because the proposed NPS Class, including its proposed sub-classes, is not ascertainable.

## POINT II

### PLAINTIFFS FAIL TO SATISFY THEIR BURDEN UNDER RULE 23 WITH RESPECT TO THE PROPOSED AUTISM SERVICES CLASS

As discussed above, *see supra* p. 13 n.13, it is unclear whether Plaintiffs are even purporting to assert their proposed Autism Services Class against the State Defendants, rather just the City Defendants.  But, to the extent they are, as with the proposed NPS Class, Plaintiffs have plainly failed to satisfy their burden under Rule 23.

The analysis here is an even simpler and more straightforward one.  Plaintiffs provide no evidence at all of the alleged Autism Services Policies and Practices, which is the linchpin of their certification motion, *see supra* p. 12, and, indeed, they appear to concede that they have not established the existence of such a policy.  (*See* Pls.' Mem. at 32-35.)  Instead, Plaintiffs rely entirely on their own vague and unsupported allegations that Defendants have such a policy. (*See, e.g.*, *id.* at 32, 34, 38 (citing FAC ¶¶ 57, 76, 78, 80, 81, 86).)  But allegations, of course, are of no moment on a motion for class certification.

As recent Supreme Court decisions have made clear, "plaintiffs wishing to proceed

through a class action must actually *prove* -- not simply plead -- that their proposed class satisfies the requirements of Rule 23." *Halliburton* 134 S. Ct. at 2412 (citing *Wal-Mart*, 131 S. Ct. 2541, and *Comcast Corp.*, 133 S. Ct. 1426); *see also, e.g.*, *Taylor*, 2015 WL 4560739, at *7 ("*Twombly* and *Iqbal* have no relevance to class certification allegations; the party seeking certification must be prepared to demonstrate that there are '*in fact* sufficiently numerous parties, common questions of law or fact, etc.'" (quoting *Wal-Mart*, 131 S. Ct. at 2551)).  And, as just discussed, *see supra* Point I.A, where, as here, Plaintiffs' certification is premised on the existence of a "general policy" as the "glue" holding together numerous individual claims, that policy must be established, at the certification stage, through "significant proof" and by a preponderance of the evidence.  *Wal-Mart*, 131 S. Ct. at 2553; *see, e.g.*, *Ruiz*, 2015 WL 1254820, at *6-12; *Fernandez*, 2013 WL 4540521, at *1, *5-13; *White*, 2011 WL 6140512, at *5-6.

Once again, however, in support of their proposed Autism Services Class, Plaintiffs have submitted nothing: no affidavits, no expert or statistical analysis, and no documentation evidencing that the alleged Autism Services Policies and Practices exists or has ever impacted any of the Plaintiffs or any other proposed class member.  (*See* Pls.' Mem. at 32-40.)[17]  And, as Assistant Commissioner DeLorenzo has expressly stated, any allegations that SED has such

---

[17] Although it does nothing to support their claims of the alleged Autism Services Policies and Practices in any event, it should be noted that, in an apparent effort to support certification of the proposed Autism Services Class, Plaintiffs grossly mischaracterize both the deposition testimony of SEQA's New York City Regional Coordinator Belinda Johnson and the state of the law with respect to applied behavioral analysis ("ABA").  As the Second Circuit has noted, ABA is, as Ms. Johnson testified, an instructional methodology, *see, e.g.*, *R.E.*, 694 F.3d at 177; *see also, e.g.*, *A.D.* v. *Bd. of Educ.*, 690 F. Supp. 2d 193, 199 (S.D.N.Y. 2010), and, also in accord with Ms. Johnson's testimony, the Second Circuit has made clear that IEPs need not list such specific methodologies to provide a disabled child with a FAPE, *see R.B.* v. *N.Y.C. Dep't of Educ.*, 589 F. App'x 572, 576 (2d Cir. 2014); *see also, e.g.*, *H.C.* v. *Katonah-Lewisboro Union Free Sch. Dist.*, No. 09 Civ. 10563 (PED), 2012 WL 2708394, at *15 (S.D.N.Y. May 24, 2012) (noting that "[t]here is no obligation under the IDEA for a school district to provide a specific program or employ a specific methodology in providing for the education of children with disabilities"), *aff'd*, 528 F. App'x 64 (2d Cir. 2013).

"policies and procedures limiting the services that a student with autism may receive" are simply untrue.  (DeLorenzo Decl. ¶ 30.)  To the contrary, SED has promulgated regulations "to specifically ensure that students with autism receive the services and programs required."  (*Id.*); *see* 8 N.Y.C.R.R. § 200.13(c) ("All school districts are required to furnish appropriate educational programs for students with autism from the date they become eligible for a free appropriate public education until they obtain a high school diploma, or until the end of the school year in which they attain their 21st birthday, whichever occurs first.").

Thus, Plaintiffs' motion for certification of the proposed Autism Services Class should be denied on the very same bases that the proposed NPS Class fails -- for lack of commonality, lack of typicality, and failure to meet the requirements of Rule 23(b)(2).[18]

## POINT III
## CLASS CERTIFICATION IS UNWARRANTED BECAUSE IT IS UNNECESSARY

Not only have Plaintiffs failed to demonstrate that either of their proposed classes satisfies the requirements of Rule 23, class certification also should be denied here because, under the doctrine established by the Second Circuit's decision in *Galvan* v. *Levine*, 490 F.2d 1255 (2d Cir. 1973), it is unnecessary.  *Id.* at 1261; *see, e.g.*, *Berger* v. *Heckler*, 771 F.2d 1556, 1566-67 (2d Cir. 1985); *Forts* v. *Ward*, 621 F.2d 1210, 1217 (2d Cir. 1980).  As the Second Circuit has held, where "the relief sought is prohibitory, an action seeking declaratory or injunctive relief against state officials on the ground of unconstitutionality [and, here, also alleged illegality under federal statutory law] of a statute or administrative practice is the archetype of one where class designation is largely a formality."  *Galvan*, 490 F.2d at 1261; *see also, e.g.*, *Lincoln CERCPAC* v. *Health & Hosps. Corp.*, 920 F. Supp. 488, 493 (S.D.N.Y. 1996)

---

[18] In addition, as the key term "Autism Services Policies and Practices" is left undefined, *see supra* pp. 12-13, Plaintiffs, just as with the NPS Class, have failed to demonstrate that the Autism Services Class is ascertainable.  *See supra* Point I.D.

("Since plaintiffs seek declaratory and injunctive relief against a government agency . . . , plaintiffs' motion is denied on the ground that it is superfluous.").

That is the case here.  Though the State Defendants submit that they do not exist, and Plaintiffs certainly have not come close to proving their existence, if the Court were to determine that these alleged "general polic[ies]" actually do exist, any judgment declaring invalid or enjoining the alleged NPS Directives or the alleged Autism Services Policies and Practices would, as a matter of course, "run to the benefit not only of the named plaintiffs but of all others similarly situated."  *Galvan*, 490 F.2d at 1261; *accord, e.g.*, *Davis* v. *Smith*, 607 F.2d 535, 540 (2d Cir. 1979); *see also Berger*, 771 F.2d at 1566-67 (noting that it would be "unthinkable" for "public officials, mindful of their responsibilities," not to "apply [an adverse] determination . . . equally to all persons similarly situated").  Class certification is thus unnecessary, and, for this reason, too, Plaintiffs' motion should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for class certification should be denied.

Dated: New York, New York
       September 30, 2015

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York
*Attorney for State Defendants*

By:
/s/ **William J. Taylor, Jr.**
William J. Taylor, Jr.
Michael R. Klekman
Assistant Attorneys General
120 Broadway, 24th Floor
New York, New York 10271
(212) 416-8426
william.taylor@ag.ny.gov