UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————— x

M.G. and V.M., on behalf of themselves             :     Civil Action No. 1:13-cv-04639 (SHS)(RWL)
individually and as next friends on behalf of      :
their child, Y.T.; M.W., on behalf of herself      :     MEMORANDUM OF LAW IN SUPPORT
individually and as next friend on behalf of her   :     OF PLAINTIFFS' MOTION TO COMPEL
son, E.H.; A.D., on behalf of herself              :     THE STATE DEFENDANTS'
individually and as next friend on behalf of her   :     PRODUCTION OF DOCUMENTS
son, D.D.; N.S., on behalf of himself              :
individually and as next friend on behalf of his   :
child, K.S.; E.H. 1, on behalf of herself          :
individually and as next friend on behalf of her   :
child, E.H. 2; E.E.G., on behalf of herself        :
individually and as next friend on behalf of her   :
son, Y.A.; A.G., on behalf of herself              :
individually and as next friend on behalf of her   :
sons, S.B. and K.B., Individually and on Behalf    :
of All Others Similarly Situated,                  :
                                                   :
                        Plaintiffs,                :
                                                   :
            vs.                                    :
                                                   :
NEW YORK CITY DEPARTMENT OF                        :
EDUCATION; NEW YORK CITY BOARD                     :
OF EDUCATION; RICHARD CARRANZA,                    :
in his official capacity as Chancellor of the      :
New York City School District; NEW YORK            :
STATE EDUCATION DEPARTMENT,                        :
COMMISSIONER MARY ELLEN ELIA, in                   :
her official capacity as Commissioner of the       :
New York State Education Department,                :
                                                   :
                        Defendants.                :

—————————————————————— x

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................1

II.   RELEVANT FACTUAL ALLEGATIONS AND PROCEDURAL
      BACKGROUND ................................................................................................3

III.  ARGUMENT ......................................................................................................6

      A.    Applicable Standards ...............................................................................6

      B.    The State Defendants' History of Neglecting Their Discovery Obligations ...........7

      C.    The Court Should Direct State Defendants to Comply with FRCP 34 .................18

      D.    The Court Should Compel the State Defendants to Produce a Privilege
            Log for Certain Assertions of Privilege ................................................20

      E.    The State Defendants' Boilerplate Objections Should be Rejected......................21

      F.    The State Defendants Have Failed to Comply with Plaintiffs' Discovery
            Requests ...............................................................................................22

IV.   CONCLUSION...................................................................................................25

# TABLE OF AUTHORITIES

**Page**

## CASES

*Am. Rock Salt Co. LLC v. Norfolk S. Corp.*,
    228 F.R.D. 426 (W.D.N.Y. 2004)........................................................................21

*Associacão dos Profissionais dos Correios v. Bank of N.Y. Melon Corp.*,
    No. 22-MC-0132 (RA) (KHP), 2022 WL 4955312
    (S.D.N.Y. Oct. 4, 2022) ...................................................................................6

*Assoc. Mortg. Bankers, Inc. v. CalCon Mutual Mortgage LLC*,
    No. CV-13-5927 (ADS)(AKT), 2016 WL 11339557
    (E.D.N.Y. Sept. 12, 2016)................................................................................18

*Aviles v. S&P Global, Inc.*,
    583 F. Supp. 3d 507 (S.D.N.Y. 2022).................................................................7

*Bey v. City of New York*,
    No. 99 Civ. 3873(LMM)(RLE), 2010 WL 3910231
    (S.D.N.Y. Sept. 21, 2010).................................................................................6

*Century Jets Aviation LLC v. Alchemist Jet Air LLC*
    2011 WL 724734
    (S.D.N.Y. Feb. 8, 2011) ..................................................................................18

*Daval Steel Prods., a Div. of Francosteel Corp. v. M/V Fakredine*,
    951 F.2d 1357 (2d Cir. 1991)............................................................................6

*Distefano v. Law Offices of Barbara H. Katsos, PC*,
    No. CV-11-2893 (JS) (AKT), 2013 WL 1339536
    (E.D.N.Y. Mar. 29, 2013) ...............................................................................18

*Gilead Sciences, Inc. v. Safe Chain Solutions LLC*,
    345 F.R.D. 12 (E.D.N.Y. 2023) ........................................................................7

*Holloway v. City of N.Y.*,
    No. 21-CV-3858 (AMD) (CLP), 2023 WL 6614599
    (E.D.N.Y. Sept. 28, 2023)...............................................................................21

*Kunzler v. Wilkie*,
    No. 19-CV-7181 (JS) (ARL), 2021 WL 9244083
    (E.D.N.Y. Nov. 5, 2021) .................................................................................18

*M.G. v. New York City Department of Education*,
    162 F. Supp. 3d 216 (S.D.N.Y. 2016)................................................................3

Page

*Pass & Seymour, Inc. v. Hubbell, Inc.*,
    255 F.R.D. 331 (N.D.N.Y. 2008) ........................................................................18

*S.E.C. v. Collins & Aikman Corp.*,
    256 F.R.D. 403 (S.D.N.Y. 2009) ...................................................................18, 19

*Schrom v. Guardian Life Ins. Co. of America*,
    No. 11 Civ. 1680 (BSJ) (JCF), 2012 WL 28138
    (S.D.N.Y. Jan. 5, 2012)..................................................................................19

**STATUTES, RULES AND REGULATIONS**

20 U.S.C.
    §1400.................................................................................................................3
    §1407(a)(b) .......................................................................................................4
    §1412(a)(11) .....................................................................................................4
    §1412(g).............................................................................................................4
    §1415(j)......................................................................................................20, 23

29 U.S.C.
    §794...................................................................................................................3

34 C.F.R.
    §300.34..............................................................................................................5
    §300.114(b)(1)(ii) .............................................................................................4

42 U.S.C.
    §1983 of the Rehabilitation Act of 1973..........................................................3
    §504 of the Rehabilitation Act of 1973........................................................3, 5

Federal Rules of Civil Procedure
    Rule 26.............................................................................................................12
    Rule 26(b)(1)......................................................................................................6
    Rule 34......................................................................................................1, 18, 19
    Rule 34(b)(2)(E)(i).....................................................................................18, 19
    Rule 34(b)(2)(E)(ii).........................................................................................18
    Rule 34(E)........................................................................................................16
    Rule 37...............................................................................................................6
    Rule 37.3......................................................................................................3, 17
    Rule 37.2....................................................................................................7, 10

Pursuant to Federal Rules of Civil Procedure (the "Rules") 26 and 37, Plaintiffs[1] respectfully submit this memorandum of law in support of their Motion to Compel the State Defendants'[2] Production of Documents.[3]

## I.    INTRODUCTION

Since the inception of this case, Plaintiffs have served five requests for production of documents on the State Defendants ("Plaintiffs' Requests"). As detailed herein, the State Defendants have not complied with the Plaintiffs' Requests, either by failing to produce relevant responsive documents, or by: (a) producing irrelevant documents; (b) failing to cross-reference their production or to explain how the documents were produced as kept in the ordinary course of business, as required under Rule 34; (c) interposing boilerplate objections; (d) producing more than 100,000 pages of disorganized documents since September 2023 that were not sorted by date, time, or topic, and which included numerous duplicates; (e) failing to explain where and how documents were stored and maintained or producing organizational charts; and (f) failing to update data and documents that had been produced early on in the litigation.

---

[1]    Plaintiffs in this action are: the D.D. Plaintiffs, the E.H. Plaintiffs, the K.S. Plaintiffs, the S.B. Plaintiffs, the E.H.2 Plaintiffs, the Y.A. Plaintiffs, the J.A. Plaintiffs, and the J.A.1 Plaintiffs. ECF No. 298 (the "Fifth Amended Complaint" or the "FAC"), ¶¶10-17. The Y.T. Plaintiffs were dismissed from this action on July 6, 2022. ECF No. 372.

[2]    The State Defendants are: the New York State Education Department and Shannon Tahoe, Interim Commissioner, in her official capacity as Commissioner of the New York State Education Department. The City Defendants are: the New York City Department of Education, the New York City Board of Education, Carmen Farina in Her Official Capacity as Chancellor of the New York City School District, and Richard Carranza in His Official Capacity as Chancellor of the New York City School District.

[3]    Capitalized terms have the meaning given in the FAC. *See* ECF No. 298. Throughout this memorandum, unless otherwise noted, all emphasis is added and all internal citations and quotations marks are omitted. The exhibits ("Ex.") cited herein are attached to the Declaration of Elisa Hyman in Support of Plaintiffs' Motion to Compel the State Defendants' Production of Documents ("Hyman Decl."), dated March 5, 2024, filed concurrently herewith.

These failures by the State Defendants have made it exceedingly difficult, if not impossible, for Plaintiffs to properly identify which document requests have been adequately responded to and which remain outstanding, thereby necessitating the instant motion. Further, the State Defendants have either expressly refused to produce large categories of relevant documents, or are withholding responsive documents based on unsupported objections.

Although Plaintiffs are moving to compel the production of updated documents across all categories, this motion does not include all of the document-specific deficiencies with the State Defendants' productions since September 2023 (which contained over 127,000 pages). Those productions include numerous emails, as well as other documents that appear to be missing attachments or that are otherwise incomplete and/or outdated. The document-specific issues for these recent productions are not ripe or practicable to be specifically addressed in this motion, as Plaintiffs are unsure whether State Defendants object to supplementing these documents (or not), although they are generally covered as part of Plaintiffs' motion to compel the production of complete and updated documents across all categories.

Plaintiffs attempted to ascertain whether the State Defendants intended to make another production before this motion was filed, or at some later time, but they failed to respond to Plaintiffs' inquiries on this. Thus, Plaintiffs are sending the State Defendants a letter with specific document-based inquiries regarding their recent productions, in the hope that those requests do not need to become the subject of further motion practice.

Accordingly, Plaintiffs respectfully request that the Court issue an order compelling the State Defendants to: (i) comply with their discovery obligations by producing documents responsive to all outstanding discovery requests; (ii) formally represent whether responsive documents exist; (iii) cross-reference the State Defendants' document production in order to

clarify which documents are responsive to which request (and which are irrelevant); and (iv) prepare a privilege log for certain categories of documents being withheld.

In light of the protracted history of discovery disputes, and in the interest of maintaining the operative discovery schedule, Plaintiffs also respectfully request they be excused from participating in a pre-motion meet and confer on certain topics of the discovery dispute as per Local Rule 37.3. Rather, Plaintiffs respectfully request that the Court order that (a) any meet and confer discussion be held <u>after</u> Plaintiffs' motion to compel is briefed by both parties; or (b) the Court moderates any meet and confer discussions before the State Defendants' opposition to Plaintiffs' motion to compel is due.

## II.   RELEVANT FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND[4]

This class action was brought by New York City parents of children with disabilities and who have or will have individualized education programs ("IEPs") under the Individuals with Disabilities Education Act (the "IDEA"), 20 U.S.C. §1400, *et seq.* ("Plaintiffs"). This action also raises claims pursuant to, *inter alia*, 42 U.S.C. §1983, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 ("Section 504").

On January 4, 2016, the Court granted Plaintiffs' motion for class certification and certified an Autism Services Class, an NPS Directive Class, and two subclasses. ECF No. 112; *see M.G. v. New York City Department of Education,* 162 F. Supp. 3d. 216 (S.D.N.Y. 2016). On May 1, 2020, Plaintiffs filed the FAC which narrowed some claims, clarified others and expanded the allegations concerning shortages of Autism Services. *See, generally* FAC. The FAC also alleged additional subclasses which Plaintiffs seek to certify, including Section 504 Autism and NPS

---

[4]   Additional relevant procedural background regarding this action is set forth in Plaintiffs' Motion to Compel the City Defendants' Production of Documents. ECF No. 402.

Subclasses (FAC ¶¶470, 489, 497), a Due Process NPS Subclass II (all members of the NPS Class who received or will receive additional NPS Services after July 2012 through litigation) (*id*. ¶469), and the NPS Autism Services Subclass (members of the Autism Services Class who are recommended for or attend NPS Programs). *See id*. ¶490.

Under the IDEA, the City and State Defendants have different roles and responsibilities with respect to special education. The State Defendants (as the "State Educational Agency" or "SEA") are responsible for the "general supervision" of special education, which includes adopting IDEA-compliant policies, rules and regulations and otherwise ensuring that all the mandates of the IDEA are met. *See* 20 U.S.C. §§1407(a)(b), 1412(a)(11). Moreover, the SEA is the "guarantor" of FAPE, in that it is required to provide services "directly to children with disabilities" when the local educational agency is unable to develop programs that offer a FAPE. 20 U.S.C. §1412(g). Further "[a] State must not use a funding mechanism by which the State distributes funds on the basis of the type of setting in which a child is served that will result in the failure to provide a child with a disability FAPE according to the unique needs of the child." 34 C.F.R. §300.114(b)(1)(ii).

With respect to the State Defendants, the main allegations regarding the Autism Services Class and various certified and proposed subclasses include that State Defendants have:

1.    Enacted policies, practices, procedures and guidance that are inconsistent with IDEA relative to the Autism Services class.

2.    Failed to enact policies, practices, procedures and guidance that are required under the IDEA.

3.    Not included Autism Services on their menu of service options and/or placed other restrictions on the ability of IEP teams to recommend such services and failed to ensure a source of funding for those services.

4.    Caused, contributed to and exacerbated the shortage of Autism Services.

5.    Failed to properly supervise the City Defendants to ensure that they are providing a FAPE to Class Members.

6.    Intentionally made it challenging for programs to address the needs of Autism Services Class members.

7.    Implemented policies that effectively prevent the City Defendants from being able to provide a FAPE to Class and Subclass Members.

8.    Failed to monitor, supervise and act as guarantors of FAPE, thereby violating their duty to Class and Subclass Members.

9.    Failed to ensure that there are a sufficient number of NPS Programs that offer Autism Services.

10.    Failed to ensure that orders and stay-put rights related to the Autism Service Class are implemented in a timely manner.

11.    Adopted policies, procedures, protocols and regulations that discriminate against children with Autism.

12.    Failed to approve any NPS Programs that offer after-school, extended day or home-based services, or any Autism Services.

With respect to the State Defendants, the main allegations regarding the NPS Directive Class and various certified and proposed subclasses include that:

1.    The NPS Directive – as described with regard to the State Defendants in the class certification motion – is still in effect and violates the IDEA and Section 504.

2.    The NPS Directive prevents children whose needs cannot be met by public programs from receiving an individualized FAPE.

3.    The exceptions policy is limited and controlled by the State Defendants which violates the IDEA, as the IEP team is supposed to be empowered to determine the IEP and placement for students.

4.    The State Defendants have not published any public documents that describe the NPS Directive or the exceptions policy nor have they advised parents of NPS students of their rights under the NPS Directive.

5.    The NPS Programs certified by the NYSED offer some, but not all, of the related services listed in 34 C.F.R. §300.34.

6.    Parents of students that require related services (for a FAPE) that are not offered by their NPS Program have only the following limited options: (i) attend the NPS program without the necessary related service; (ii) forego the NPS placement entirely; or (iii) seek related services through litigation.

7.  The NPS Directive prevents the City Defendants from offering a FAPE to children in NPS Programs.

8.  The NPS Directive discriminates against children who need NPS programs relative to their less disabled peers who can attend public school, and typically developing children.

9.  Even when NPS Directive Class Members are awarded related services in due process, those services are not timely implemented, and their pendency rights are not timely implemented.

10. The State Defendants have failed to monitor, supervise and act as guarantors of FAPE thereby violating their duties to Class and Subclass Members.

## III.   ARGUMENT

### A.   Applicable Standards

Pursuant to Rule 26(b)(1), requests for discovery must be "tailored to seek information relevant to the parties' claims and defenses and proportional to the needs of the case." *Associacão dos Profissionais dos Correios v. Bank of N.Y. Melon Corp*., No. 22-MC-0132 (RA) (KHP), 2022 WL 4955312, at *8 (S.D.N.Y. Oct. 4, 2022) (citing Fed. R. Civ. P. 26(b)(1)). The purpose of allowing discovery is to "prevent sandbagging an adversary with undisclosed evidence." *Bey v. City of New York*, No. 99 Civ. 3873(LMM)(RLE), 2010 WL 3910231, at *5 (S.D.N.Y. Sept. 21, 2010). "This obviously broad rule is liberally construed." *Daval Steel Prods., a Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991). The assessment of whether the requested discovery is "proportional" to the needs of the case requires the Court to consider "the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "[U]nder Rule 37, a party may move for an order to compel discovery when it had received no response to its interrogatory or document requests, provided the movant has in good faith conferred with the opposing party in an attempt to secure

the sought responses or documents." *Aviles v. S&P Global, Inc.*, 583 F. Supp. 3d 507, 516 (S.D.N.Y. 2022).

Here, an analysis of these factors all tip heavily in favor of granting Plaintiffs' motion to compel. Plaintiffs need to access discovery regarding the NPS Directive, the exceptions to these procedures and the provision of Autism Services because their claims implicate the federal entitlement and civil rights of tens of thousands of vulnerable children. Further, the parties are not equally positioned with respect to their ability to obtain relevant documents. The State Defendants enjoy unfettered access to government records concerning the issues in this case, whereas Plaintiff parents and students lack any access to such information unless it has been made available on the State Defendants' website. Compelling discovery under these circumstances is particularly appropriate. *See also Gilead Sciences, Inc. v. Safe Chain Solutions LLC*, 345 F.R.D. 12, 20 (E.D.N.Y. 2023) (granting plaintiff's motion to compel; noting that "the more relevant the information sought is, the less likely a Court would find the subject discovery disproportionate.").

**B.    The State Defendants' History of Neglecting Their Discovery Obligations[5]**

In a conference held on June 3, 2014, the Court granted limited expedited discovery from the bench concerning, *inter alia*, the NPS issues. Pursuant to the Court Order, Plaintiffs deposed

---

[5]    The parties' discovery disputes are extensive. For the purposes of this motion, Plaintiffs summarize only the most salient history regarding the State Defendants' failure to produce documents. The history of the disputes concerning the State Defendants' previous responses to Plaintiffs' Requests up until August 2020 are outlined in detail in three letters previously filed with the Court: an October 11, 2017 Letter ("October 2017 Letter," ECF No. 171), an October 24, 2019 Letter to State Defendants ("October 2019 Letter," Ex. K), and an August 5, 2020 Letter to the Court requesting a Rule 37.2 conference ("August 2020 Letter," ECF No. 308). ECF No. 308. The October 2019 Letter was attached as an exhibit to the August 2020 letter. *See* ECF No. 308-3 and Ex. K. Thus, this history will only be briefly summarized, as the October 2019 and August 2020 Letters provide a detailed recitation of the State Defendants' production and the history of their responses to Plaintiffs' requests.

Belinda Johnson, the New York City Regional Coordinator of New York State Education Department. Additionally, on August 3, 2015, the State Defendants produced approximately 717 pages of documents concerning the NPS directive. On August 28, 2015, Plaintiffs served their First Request For Production of Documents To The New York State Education Department And Commissioner John B. King, In His Official Capacity As Commissioner Of The New York State Education Department ("NYS First Requests," *see* Ex. A). On October 19, 2015, the State Defendants served their Responses and Objections to the NYS First Requests. Ex. B. On December 24, 2015, the State Defendants made their first production of documents, as described in the October 2017 Letter (s*ee* ECF No. 171) and the October 2019 Letter (*see* ECF No. 308-3 at 2-5). Upon Plaintiffs' motion, on January 4, 2016, the Court granted class certification. ECF No. 112. Shortly thereafter, on January 20, 2016 and February 12, 2016, the State Defendants produced additional documents, as described in the October 2017 Letter (*see* ECF No. 171) and the October 2019 letter (*see* ECF No. 308-3 at 2-5).

On February 15, 2017, Plaintiffs served the following: (i) Request For the Production of Documents to the New York State Education Department and Commissioner Mary Ellen Elia, in Her Official Capacity As Commissioner of the New York State Education Department, Pertaining to the NPS Class Claims ("NPS Requests," *see* Ex. C); (ii) Request For the Production of Documents To the New York State Education Department and Commissioner Mary Ellen Elia, In Her Official Capacity As Commissioner Of the New York State Education Department, Pertaining to Information Systems ("Information Systems Requests," *see* Ex. E); and (iii) Requests For The Production of Documents To the New York State Education Department and Commissioner Mary Ellen Elia, In Her Official Capacity As Commissioner Of the New York State Education Department, Pertaining to the Autism Claims ("Autism Claims Requests," *see* Ex. G).

On April 13, 2017, the State Defendants served their Responses and Objections to the NPS Requests, the Information Systems Requests and the Autism Claims Requests.  *See* Exs. D, F, H, respectively.  By October 10, 2017, when Plaintiffs had not received all documents responsive to their pending requests, they sent the October 2017 Letter (*see* ECF No. 171) which outlined numerous deficiencies with the productions of both sets of Defendants.  With respect to the State Defendants, Plaintiffs set forth, *inter alia,* that (i) out of 886 pages of the State Defendants' production, approximately 240 page were duplicates of documents previously produced in 2013; (ii) a few hundred documents pertained to grants made by the State in 2009 and court filings in lawsuits between the State Defendants and non-class member parents regarding State Review Officer delays; and (iii) approximately 3,742 pages of the production were applications by NPS programs for approvals and class size variances.  *Id.* at 3.  The October 2017 Letter also raised the concern that the State Defendants' production had not been cross-referenced with the Plaintiffs' requests.  *Id.* at 3 n.7.  Following a conference with the Court regarding the October 2017 Letter, the Court issued a referral to the Magistrate Judge to manage discovery.  ECF No. 173.

It was not until one year later, on October 15, 2018, that the State Defendants made their next production.  The State Defendants then made two additional productions, on March 19, 2019 and April 18, 2019, both of which are described in detailed in the October 2019 Letter.  *See* ECF No. 308-3 at 4-8; Ex. K.

In March 2020, the progress in the action was stalled due to the COVID-19 pandemic.

On May 1, 2020, after several months of negotiations, the Court granted Plaintiffs leave to file the FAC.  ECF No. 298.  On July 21, 2020, the State Defendants filed their Answer to the FAC.  ECF No. 305.

By August 5, 2020, Plaintiffs had not received any additional documents and wrote the Court requesting a Local Rule 37.2 Conference and a waiver of the meet and confer requirement because Plaintiffs' efforts to meet and confer with the State Defendants up to that point had not been productive. *See* ECF No. 308. On August 6, 2020, the Court directed: (a) the State Defendants to send a letter to Plaintiffs concerning their production; (b) the parties to meet and confer concerning the State Defendants' document production; and (c) the parties to file a joint letter with the Court. *See* ECF No. 310. Plaintiffs and the State Defendants met and conferred on August 28, 2020 and, on September 14, 2020, the parties submitted a joint letter outlining the issues in dispute. *See* ECF No. 315.

On September 16, 2020, the Court provided further directives regarding certain discovery issues. ECF No. 316. At the time, the Court found that the State Defendants' representation that they had "produced all documents in their possession, custody, or control that they deem responsive to Plaintiffs' discovery requests" satisfied the Court to the extent that there were no other objections pursuant to which the State Defendants had withheld documents. *Id.* However, since then, the deficiencies in the State Defendants' production has become plainly evident from the fact that, in 2023 and 2024, the State Defendants produced thousands of additional documents. Further, in 2020, the Court did not address the State Defendants' reservation of rights that their representation to the Court regarding their completed production did not include any documents they might have that was electronically stored information ("ESI"). *Id.* This reservation of rights undermined the State's entire position that they had met their discovery obligations because virtually all records they maintained would likely be considered ESI.

As noted, on August 5, 2020, Plaintiffs raised their concerns with this Court and requested a Rule 37.2 conference. *See* ECF No. 308. In response, on August 6, 2020, the Court directed the

State Defendants to address these deficiencies and ordered that (a) the State Defendants send a letter to Plaintiffs concerning certain aspects of their production; (b) the parties meet and confer concerning the State Defendants' document production and; (c) the parties submit a joint letter to the Court regarding the status of discovery. *See* ECF No. 310. In response to the Court's Order, the State Defendants produced 377 pages of documents on August 17, 2020, which they claimed were generally responsive to Plaintiffs' NPS Class and Autism Class requests (State Def. 5034-5041). Ex. L.[6] In that letter, the State Defendants represented that they had not "withheld any responsive materials on the basis of privilege or otherwise," and that they had "produced all documents in their possession, custody, or control that they deem responsive to Plaintiffs' discover requests." *Id*. Further, the State Defendants claimed that they "do not have any additional responsive documents in their possession, custody, or control." *Id*. However, later in the litigation, it became clear that this position was being qualified by the State Defendants' view that they had produced all documents except for any ESI.

During the summer of 2020, the parties tried to negotiate an ESI protocol, but unsurprisingly were unable to agree. On August 27, 2020, Plaintiffs sent the State Defendants a draft ESI protocol, which proposed, among other things, that the State Defendants identify all potential custodians of ESI and provide a list of proposed search terms for discussion. ECF No. 329. On August 28, 2020, the State Defendants advised that they refused to disclose custodians or propose search terms, a position which they reiterated in the parties' September 14, 2020 joint

---

[6]    This production was comprised of only 377 pages: a June 2020 snapshot of licensed LBAs and CBAAs in the state (42 pages), 122 pages of documents about impartial hearing officer ("IHO") backlogs in 2020, IHO compensation, a hearing manual update and 194 pages of notes from IHOs as to why they recused themselves from hearings, one undated email between a NYSED employee and the DOE regarding the NPS exceptions policy and a chart of "exceptions" to the NPS Policy granted by Defendant NYSED through mid-April 2019.

letter to the Court. *See* ECF No. 315. In the parties' joint letter, the State Defendants also claimed that they had produced all responsive documents within their possession, custody and control "with the exception of electronic discovery." *Id.* Again, that qualification rendered the State Defendants' previous representation about not having any additional responsive documents meaningless, as virtually every document in the case qualifies as ESI.

Also on August 28, 2020, the State Defendants submitted their proposed ESI Protocol which eliminated all of the provisions in Plaintiffs' initial ESI proposal and limited the proposed production for ESI to six custodians and fifteen searches. ECF No. 326-001. On September 23, 2020, Plaintiffs informed the State Defendants of their disagreement with the State Defendants' proposal. *See* Ex. M.

On September 16, 2020, the Court issued an order providing certain directives concerning discovery. ECF No. 316. The Court again noted the State Defendants' representation that they had produced all responsive documents in their possession. Further, the Court rejected the State Defendants' argument that Plaintiffs were obligated to propose custodians and terms for collection of ESI from the State Defendants under Rule 26, and ordered, among other things, that the State Defendants provide Plaintiffs with a letter by September 30, 2020 stating whether they had withheld any documents on the basis of any objections to Plaintiffs' document requests. *Id.* Shortly thereafter, on September 30, 2020, the State Defendants wrote Plaintiffs reiterating their claim that they had not withheld any responsive materials on the basis of privilege or otherwise. Ex. N. This representation was plainly untrue as, as discussed herein, in 2023 and 2024, the State Defendants produced over 100,000 pages of additional records.

Thereafter, Plaintiffs and the State Defendants met and conferred further in an effort to reach an agreement on an ESI protocol. On October 7, 2020, the parties filed a joint letter

proposing that they continue to meet and confer about the outstanding production issues and negotiate the protocol surrounding the production of ESI. ECF No. 319. Between October 2020 through early January 2021, Plaintiffs and the State Defendants met and conferred on multiple occasions regarding the ESI protocol. ECF No. 329. During this time, the State Defendants informed Plaintiffs that they had inexplicably run searches for the six custodians they had listed in their previously rejected proposal. ECF No. 329. The State Defendants also advised Plaintiffs for the first time that they had approximately 100 folders (including subfolders) in the Office of Special Education's network drive which may contain information relevant to the lawsuit. ECF No. 329. To further the negotiations, Plaintiffs made two detailed coextensive ESI proposals to the State Defendants – one on November 25, 2020 regarding the NPS Class, and one on December 22, 2020 regarding the Autism and ABA subclasses. ECF Nos. 326-003, 326-004, 329.

On December 21, 2020, Plaintiffs served their Second Request For Production Of Documents To The New York State Education Department and Shannon Tahoe, In Her Official Capacity As Interim Commissioner Of the New York State Education Department Pertaining to Plaintiffs' Claim Claims ("Class Claims Requests," *see* Ex. I). The State Defendants failed to respond to these requests until September 29, 2023. Instead, on January 12, 2021, the State Defendants submitted a letter motion to the Court arguing, *inter alia*, that Plaintiffs' proposed ESI protocols were overly burdensome and requested that the Court so-order their September 14, 2020 ESI protocol proposal over Plaintiffs' objection. ECF No. 326. Plaintiffs responded on September 20, 2021 and requested that the Court so-order a different ESI protocol proposal. ECF No. 329.

On January 25, 2021, the Court denied the State Defendants' motion to approve their proposed ESI protocol noting that their proposal was too narrow and ordered (i) the State Defendants to submit an alternative proposal; and (ii) the parties to once again meet and confer to

reach an agreement on the ESI protocol and advise the Court of remaining disputed issues by March 8, 2021. ECF No. 330. On February 12, 2021, the parties sought and the Court granted an extension of the discovery and ESI deadlines from the Court in order to focus the parties' efforts on trying to pursue a settlement of the action. *See* ECF Nos. 332- 337. On March 23, 2021, at the joint request of all parties, the Court stayed discovery until August 2, 2021 to enable the parties to focus on settlement discussions. ECF No. 339.

The stay of discovery was extended several times, and the parties' settlement discussions continued for almost one year, during which time the Court met with the parties several times. ECF Nos. 341-342, 345-347, 350, 352-352. However, in March 2022, the State Defendants abruptly advised that they no longer wished to participate in settlement discussions, notwithstanding the fact that Plaintiffs and the City Defendants had made substantial progress and believed the negotiations were productive. Following a March 4, 2022 conference, the Court lifted the discovery stay. ECF No. 354. At the time the stay was lifted, all discovery produced by the State Defendants was already quite old. Accordingly, Plaintiffs requested updated documents and sought to revisit the discussions about outstanding requests with Defendants. ECF No. 361 (May 16, 2022 letter). In addition, given the changes to the New York State Education system, on June 21, 2022, Plaintiffs sought to file a Sixth Amended Complaint ("SAC"). ECF No. 373.

After a March 4, 2022 conference, the Court ordered Plaintiffs to file "a proposal with the Court for (a) using a partial summary judgment mechanism with respect to liability for the following categories of claims to narrow discovery: (i) NPS Directive; (ii) Autism Services; (iii) Subclass Claims for each; and (iv) ABA Licensing claims; (b) a proposal for production by City Defendants of individual student records in the category of cases discussed prior to the stay; (c) a schedule for updated FERPA notices; and (d) a sampling plan for student records for students who

attend NPS programs." ECF No. 356. The Court also ordered that "[t]he parties shall meet and confer about the proposals and, no later than May 26, 2022, shall file a joint letter addressing the extent to which the parties agree or disagree as to the proposals." *Id*. The Court set the close for fact discovery at March 31, 2023. *Id*. After a short extension, on May 17, 2022, Plaintiffs submitted a detailed proposal that, *inter alia*, sought to narrow the discovery disputes at issue. ECF No. 361. On June 21, 2022, the parties submitted a joint letter regarding their proposals. ECF No. 366. In response, on August 11, 2022, the Court issued an order stating, *inter alia*, that "The parties are free to propose and agree to stipulate to facts at any time to narrow issues in the case." ECF No. 378.

Shortly after the Court's August 11, 2022 order, Ms. Matthews (counsel for the State Defendants) left for a personal leave due to the birth of a child and, in December 2022, Ms. Saffir (also counsel for the State Defendants) resigned. Ms. Matthews did not return until February 23, 2023 and the State Defendants did not staff another lawyer on the case until March 22, 2023. ECF No. 384.

Given the outstanding discovery deficiencies, on March 10, 2023, Plaintiffs filed a letter with the Court seeking a discovery extension. ECF No. 381. On April 18, 2023, the parties participated in a Case Management Conference with the Court. ECF No. 387. Notwithstanding the State Defendants' prior representation that they had produced all responsive documents in their possession, on April 28, 2023, the State Defendants produced additional documents (State Def. 5850 – 7136). Those documents appear to be NYSED compliance monitoring reports from NPS programs across the state, for years up to 2019, as well for 2021-2022. Because the State Defendants have not produced updated data concerning the number of New York City students in NPS programs, Plaintiffs are unable to determine which of these monitoring reports are relevant.

Again, notwithstanding their prior representations, on September 6 and 29, 2023, the State Defendants made additional productions (State Def. 7137-2913 and State Def. 29336-78050). Additionally, on September 29, 2023, the State Defendants served Responses and Objections to Plaintiffs' December 21, 2020 Request for Production. *See* Exs. I, J. The State Defendants made two more productions, one on December 21, 2023 (State Def. 78053-127335), and one on February 16, 2024 (127271-134430). The September 2023 through February 2024 productions (State Def. 7137 to 134430) ("Recent Production") were a combined 127,293 pages. The Court should take note of the fact that the State Defendants produced the overwhelming majority of their documents after they claimed that they had no additional responsive documents. This raises serious concerns about the credibility of any representations that State Defendants have made (or make in the future) concerning their document production.

The Recent Production is comprised of a mixed set of documents, including emails with attachments that cover a range of topics (relevant and irrelevant), and which were produced in disorganized fashion (documents dated 2013 were produced alongside documents from 2021, with random topics and custodians published next to each other). None of the documents in the Recent Production appear to be produced in the ordinary course of business or cross-referenced, as required by FRCP 34(E).

These productions also contain *multiple* duplicates of irrelevant or public documents, such as the following documents: (a) a 194 page published article by a law professor; (b) documents concerning monitoring of public schools, districts and charter schools outside of New York City; (c) publicly available reports (*i.e.* at least nine final copies of a 2022 Autism Cost Study Report were included in the September 29, 2023 production); (d) previously produced letters and documents concerning the NPS policy which are exhibits filed in connection with the class

certification motion; and (e) multiple copies of a reproduction of the State Defendants' 2020 compliance review of the City Defendants with attachments (documents which Plaintiffs had initially produced to the State Defendants).

Moreover, all the documents in the Recent Production were marked "confidential" despite the fact that the majority of the documents were publicly available, or did not contain any confidential information. Plaintiffs dispute the "confidential" designation unless the documents include the name of a child and/or identifying information that renders them confidential.

On December 6, 2023, in the parties' joint letter, Plaintiffs advised of their intention to file the instant motion. ECF No. 403. The State Defendants claimed that Plaintiffs' representation in that letter was "the first time Plaintiffs have made the State Defendants aware of any supposed deficiencies in their document production." *Id.* Given the protracted discovery discussions between the parties, this is plainly not the case. In fact, the only responses that the parties have not formally met-and-conferred on is the State Defendants' September 29, 2023 Responses (which were discussed extensively before the parties moved the case to settlement track). Further, given the State Defendants' representations that they did not have any additional responsive documents, followed by their production of over 127,000 pages of additional documents, Plaintiffs do not believe any meet and confers about discovery that is not supervised by the Court would be productive. Accordingly, as noted above, Plaintiffs respectfully request that they be excused from participating in a pre-motion meet and confer on these issues as per Local Rule 37.3. Instead, Plaintiffs respectfully request the Court order that (a) any meet and confer discussion be held <u>after</u> Plaintiffs' motion to compel is fully briefed; or (b) the Court moderates any meet and confer discussions before the State Defendants' opposition to Plaintiffs' motion to compel is due.

### C.    The Court Should Direct State Defendants to Comply with FRCP 34

Pursuant to Fed. R. Civ. P. 34(b)(2)(E)(i), "unless otherwise stipulated or ordered by the court. . . [a] party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request."  Further, "a party must produce [ESI] in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms."  Fed. R. Civ. P. 34(b)(2)(E)(ii); *Assoc. Mortg. Bankers, Inc. v. CalCon Mutual Mortgage LLC*, No. CV-13-5927 (ADS)(AKT), 2016 WL 11339557, at *4 (E.D.N.Y. Sept. 12, 2016).  The producing party "bears the burden of demonstrating that the documents made available were in fact produced consistent with that mandate," and "must do more than merely represent to the court and the requesting party that the documents have been produced as they are maintained." *Pass & Seymour, Inc. v. Hubbell, Inc.*, 255 F.R.D. 331, 334-335 (N.D.N.Y. 2008); *accord S.E.C. v. Collins & Aikman Corp.*, 256 F.R.D. 403, 409-410 & n.32 (S.D.N.Y. 2009); *see also Distefano v. Law Offices of Barbara H. Katsos, PC*, No. CV-11-2893 (JS) (AKT), 2013 WL 1339536, at *5 (E.D.N.Y. Mar. 29, 2013); *Kunzler v. Wilkie*, No. 19-CV-7181 (JS) (ARL), 2021 WL 9244083, at *3 (E.D.N.Y. Nov. 5, 2021).[7]  When faced with an objection about the failure to cross-reference a production, courts frequently require the producing party to explain how its documents are organized in the ordinary course of business and what steps the party took to search for and produce the documents.  *See, e.g., Century Jets Aviation LLC v. Alchemist Jet* Air *LLC*, No. 08 Civ. 9892 (GBD) (KNF), 2011 WL 724734, at *3-*4 (S.D.N.Y. Feb. 8, 2011); *Pass & Seymour, Inc.*, 255 F.R.D. at 333-338 (collecting cases).  Such an explanation is particularly necessary where there is

---

[7]    *See also Pass & Seymour, Inc.*, 255 F.R.D. at 333–34 ("[t]he provision authorizing production in accordance with [the option to produce documents as they are kept in the ordinary course of business] was born out of the disfavor shown by courts to the dumping of massive quantities of documents, with no indexing or readily apparent organization, in response to a document request from an adversary.").

a large volume of documents being produced.  *See Schrom v. Guardian Life Ins. Co. of America*, No. 11 Civ. 1680 (BSJ) (JCF), 2012 WL 28138, at *6 (S.D.N.Y. Jan. 5, 2012).  While Rule 34 does not define "documents as they are kept in the usual course of business" courts have found that it means records made in the course of "regularly conducted activity."  *S.E.C. v. Collins*, 256 F.R.D. at 412-413.  Further, where a producing party's activities are not "routine and repetitive" such as to require a well-organized record-keeping system, the producing party must produce according to the sole remaining option under Rule 34, *i.e.,* "'organize[d] and label[ed] . . . to correspond to the categories in the request.'"  *Id.* at 412-413 (citing Fed. R. Civ. P. 34(b)(2)(E)(i)).

Plaintiffs have repeatedly objected to the State Defendants' failure to cross-reference their discovery responses.  During the parties' August 2020 meet and confer, the State Defendants stated that they would not provide cross-references because their records were produced as they were kept in the usual course of business, but they failed to explain why or how that was the case.

The State Defendants have not provided any further explanation regarding the production of records made since their prior representation, including the Recent Production.  In sum, the State Defendants have not provided any details about how their documents were maintained and produced and have therefore failed to satisfy the standards for the manner of production as set forth in Rule 34.  Further, as of the date of this motion, the State Defendants have refused to state whether their document productions are complete. Clarity regarding the completeness of discovery responses is especially important where, as here: (a) absence of evidence has evidentiary value given the State Defendants' obligations under the IDEA to promulgate policies and supervise the City Defendants; and (b) the State Defendants produced the majority of their documents years after they previously represented that they had no further responsive documents; and (c) there is a large number of documents produced that do not appear to relate to any discovery request.  *See* Ex. K

(October 2019 Letter).  Thus, Plaintiffs respectfully request that the Court direct the State Defendants to articulate which bates ranges are responsive to each of Plaintiffs' individual discovery requests.

### D. The Court Should Compel the State Defendants to Produce a Privilege Log for Certain Assertions of Privilege

In their Responses and Objections, the State Defendants assert various privileges in their objections that extend beyond attorney "work product" and "attorney-client" privilege.  *See* Exs. B, D, F, H, J.  Moreover, the State Defendants have also marked some documents in the Recent Production as "withheld" on the basis of privilege without identifying what, if any, privilege is being asserted.

Given that many documents in this case involve administrative litigation, or litigation-related topics, and considering the large volume of documents, the parties had informally agreed not to log communications that were sent from or received by one of the parties' attorneys. Accordingly, in the instant motion, Plaintiffs are only requesting that the State Defendants produce a privilege log for withheld documents that were not created by, sent to or received by parties' counsel for purposes of legal advice and/or work product.  Further, Plaintiffs request that the State Defendants log any attachment that is withheld due to attorney-client or work-product privilege, provided that the document concerns the NPS Directive, exceptions to the NPS Directive, applied behavior analysis, extended school day, after-school special education or related services, 1:1 instruction or instruction in a child's home, and implementation of stay-put services under 20 U.S.C. §1415(j) and was not originally drafted by the State Defendants' attorneys.  These documents are critical to the FAC's claims and Plaintiffs are entitled to assess the validity of any claim of privilege asserted by the State Defendants.  Plaintiffs further respectfully request that any

dispute regarding the privilege designation about particular documents be submitted to the Court for *in camera review*.

### E.      The State Defendants' Boilerplate Objections Should be Rejected

"[G]eneralized objections that discovery requests are vague, overly broad and unduly burdensome are not acceptable and will be overruled." *Am. Rock Salt Co. LLC v. Norfolk S. Corp.*, 228 F.R.D. 426, 432 (W.D.N.Y. 2004); *see also Holloway v. City of N.Y.*, No. 21-CV-3858 (AMD) (CLP), 2023 WL 6614599, at *9 (E.D.N.Y. Sept. 28, 2023) (boilerplate objection and refusal to produce documents violate the "broad and liberal construction given to the Rules concerning discovery").   In their Responses and Objections, the State Defendants have raised various generalized objections, but have not provided any information about their process for searching for responsive documents.  Exs. B, D, F, H, J.  In addition, in their Class Claims Objections, the State Defendants objected to numerous requests about autism services "on the grounds that it seeks outdated or irrelevant information or documents because of recently enacted legislation or forthcoming regulations concerning ABA licensure."  This is not a proper objection.  The State Defendants also interposed the following objection to the numerous requests "[s]ubject to, and without waiver of the foregoing objections, the State Defendants will not search for documents responsive to this Request beyond what they have agreed to search for in response to other Requests." Since it is unclear what other searches, if any, the State Defendants have agreed to do, and what "other Requests" they refer to, this is not an adequate objection to Plaintiffs' request. Plaintiffs therefore request that the Court overrule the State Defendants' boilerplate objections (with the exception of the attorney-client privilege and work-product claims, subject to the review of the privilege log) and order the State Defendants to either specify the basis for their objections or order the State Defendants to produce responsive documents.

**F.    The State Defendants Have Failed to Comply with Plaintiffs'
Discovery Requests**

As set forth herein, the State Defendants did not substantially complete their production of documents by September 29, 2023, or thereafter.  Because (a) most of the their production has not been produced in the ordinary course of business or cross-referenced; (b) discovery has spanned a number of years; and (c)  many of the documents produced are not obviously relevant to particular requests on their face (such as the memoranda on mold and on hurricanes referenced in the October 2019 Letter), it is impossible for Plaintiffs to ascertain which documents were produced in response to which request.  The above, coupled with the fact that the State Defendants advised Plaintiffs in the 2020 meet and confer that they would not disclose any details about their search, search process, or location of documents, or specific details as to why a particular search would be too burdensome, it is not possible to undertake a negotiation about burden or proportionality.

Plaintiffs are submitting a detailed chart which lists Plaintiffs' outstanding requests, and whether, based on Plaintiffs' counsel's review, the State Defendants have produced responsive documents.  *See* Ex. O.

For the Court's convenience, below Plaintiffs highlight several general deficiencies in the State Defendants' production:

- In general, the State Defendants have wrongfully withheld relevant documents, failed to update stale records, and/or failed to take a clear position whether responsive documents even exist.  The State Defendants previously claimed that they completed the production, but that was plainly not true.

- The State Defendants have produced a small number of documents that are only responsive to a handful of Plaintiffs' 2020 Class Claims Requests.  *See* Exs. I, and O. They agreed to "produce relevant, non-privileged, responsive documents in their possession, to the extent any exist and are uncovered as a result of a reasonable, proportional, and not unduly burdensome and expensive search in response to several requests."    However, as far as Plaintiffs can determine, they have not produced many responsive documents.  Further, in many instances, the State Defendants' response referred Plaintiffs to an email link which contained some, but not all, of the requested information.

- The State Defendants produced notes about the City's Innovative Program Waiver Request for the ASD Nest program (State Def. 13337) but did not turn over the actual Waiver Request submitted or any other communications regarding it. In fact, Plaintiffs are aware that the State Defendants received innovative waiver requests from the DOE concerning the use of SETSS to combine consultant teacher and related services (which relates to 1:1 instruction and consultant teacher requests) and none of those documents have been produced.

- Plaintiffs recently discovered that, in September 2023, the State Defendants issued a policy clarification that indicated that unlicensed staff can work on ABA teams under proper supervision (contradicting the State Defendants' previous representations to Plaintiffs; inexplicably, the State Defendants failed to inform Plaintiffs of this new directive or produce any documents concerning it.[8]

- The only system-wide documents that the State Defendants produced concerning evaluations are documents from 2020 from the NYSED CAP report to the City Defendants about timely evaluations. The State Defendants have not produced any documents or guidance about how districts were to screen and/or assess for Autism or any Autism Services.

- The majority of the Recent Production of emails and documents is dated 2020 and earlier. There are a small number of documents from spring 2022 reflecting annual surveys by NYSED of NPS Programs seeking to determine whether the State Defendants use RSAs and some exceptions, but no documents (including emails) have been produced since that time.

- The State Defendants produced a June 2020 snapshot of Licensed ABA providers, and then in the Class Claims Objections referred Plaintiffs to statistics on NYSED's website indicating the number of LBA licenses issued between 2019 (208) and 2023 (850), as well as the total number of LBAs as of January 1, 2024 (3,097), which reached 1,747 by January 2020. However, the State Defendants have not produced the annualized data for each type of license (LBA and CBAA) as per Plaintiffs' requests starting in 2014, when the ABA License Law was enacted.

- The State Defendants have failed to produce any documents concerning implementation of Autism Services or related services for subclass members who have obtained orders for the contested services or who have the right to the services pursuant to their stay-put rights under 20 U.S.C. §1415(j).

- The State Defendants have produced some email documents concerning the NPS Directive, as well as some charts and documents concerning exceptions to the policy. However, the State Defendants have not produced any documents dated

---

[8]  *See* https://www.op.nysed.gov/professions/licensed-behavior-analysts/professional-practice/guidance-on-the-roles-of-licensed-providers-and-unlicensed-personnel-in-delivering-aba-services.

after spring 2022 concerning those topics.  Further, the State Defendants have not produced any documents indicating that parents are supposed to be advised of the NPS Directive and the exceptions policy.  Specifically, Plaintiffs seek documents to clarify: (i) the extent to which the NPS Policy remains in effect, as described in the class certification submissions; (ii) whether the State Defendants possess documents about the "exceptions" policy (to date, only one additional document beyond what was submitted in the class certification motion has been produced); (iii) whether the State Defendants possess documents concerning their specific monitoring of related service implementation and vacancies at NPS Programs (to date, no documents have been produced); and (iv) a comprehensive list of the related services offered at NPS Programs.[9]

- The State Defendants have not updated their productions to provide information regarding the number of New York City students attending particular NPS programs across the state (this data was produced for 2014-2015 and earlier years).

- Although the State Defendants denied that Autism Services are not included in the State Continuum of Special Education and Related Services in their Answer to the FAC (ECF No. 60), they have failed to produce any documents to establish that Autism Services are part of the state continuum of services.

- NYSED granted approval for the New York Center for Autism Charter School to open and run, as well as a grant for the school to collaborate with public schools. The State Defendants have failed to produce any documents concerning this program which purports to provide ABA.

- The State Defendants have failed to produce documents concerning state-approved providers for Autism Training for teachers.[10]  Upon information and belief, the State Defendants are in possession of documents beyond those set forth on the website.

- The State Defendants have failed to produce documents regarding how implementation of related services on IEPs of children in NPS programs is monitored and supervised.

---

[9]  Plaintiffs have noticed the deposition of the State Defendants' employee, Cathy Cummings, who appears to be the individual who has been recently tasked with approving NPS Directive exemptions.

[10]  *See*, *e.g.,*  https://www.nysed.gov/sites/default/files/list-of-approved-autism-workshop-providers-20230602.pdf.

## IV.    CONCLUSION

Accordingly, Plaintiffs respectfully request that the Court grant this motion in its entirety and issue an order compelling the State Defendants to: (i) comply with their discovery obligations by producing responsive documents or advising that no responsive documents exist; (ii) cross-reference their prior productions with Plaintiffs' discovery requests; (iii) produce a privilege log reflecting communications withheld or redacted on the basis of privilege, as detailed herein; and (iv) provide Plaintiffs and the Court with specific information detailing the steps taken in searching for responsive documents to date.

DATED:  March 5, 2024

Respectfully submitted,

THE LAW OFFICE OF ELISA HYMAN, P.C.
ELISA HYMAN


*/s/ Elisa Hyman*
ELISA HYMAN
1115 Broadway, 12th Floor
New York, NY 10010
Telephone:  646/572-9064
646/573-9065 (fax)
elisahyman@gmail.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
AVITAL O. MALINA
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com
amalina@rgrdlaw.com

*Attorneys for Plaintiffs*